## Isaac Forcy, alias Will Jones, v. The State.

### No. 504. Decided October 26, 1910.

**1.—Forgery—Indictment—Instrument Subject to Forgery—Pleading.**

In later times the niceties of pleading in prosecutions for forgery have not always been recognized, and the trend of modern decisions is to look rather to the substance than to the form that such instruments may take.

**2.—Same—Explanatory Averments—Face of Instrument—Financial Obligation.**

It is not the law of this State that an instrument must on its face, in the absence of extrinsic and explanatory averments, of necessity import a financial obligation before it can be made the subject of forgery.

**3.—Same—Rule Stated—Explanatory Averments.**

It is the rule in this State, where the instrument does not show on its face

that it imports an obligation in regard to money or property, but is the subject of forgery, and can be shown to be such by extrinsic averments, that these extrinsic or explanatory averments must be alleged.  Following Cagle v. State, 39 Texas Crim. Rep., 109, and other cases.

**4.—Same—Pecuniary Obligation—Person Defrauded.**

Instruments of writing may create pecuniary obligations, affect property in some manner, and be the subject of forgery, without being directed or addressed to any particular person.

**5.—Same—Rule Stated—Extrinsic Facts must be Alleged.**

An instrument which is void on its face is not as a general rule the subject of forgery; the rule, however, is subject to this qualification: if the instrument does not appear to have any validity or show that another might be injured by it, but extrinsic facts exist by which the holder might be enabled to defraud another, then the offense is complete, and an indictment averring the existence of the extrinsic facts will be sustained.

**6.—Same—Case Stated—Order for Goods—Indictment.**

Where upon trial for forgery the instrument set out in the indictment, while not in terms made payable to bearer or the defendant, was to all intents and purposes an order for goods payable to bearer, and the proper explanatory averments were set out in the indictment, the instrument was such as could be made the basis of forgery, and the indictment was sufficient.

**7.—Same—Variance—Instrument—Statement of Facts—Presumption.**

Where, upon appeal from a conviction of forgery, there appeared in the record an objection that the evidence failed to support the allegations in the indictment, there was no error, in the absence of a description of the instrument in the statement of facts different from that as set out in the indictment; a variance can not be presumed.

Appeal from the District Court of Caldwell.  Tried below before the Hon. L. W. Moore.

Appeal from a conviction of forgery; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*R. B. Ellis* and *S. R. Graves* and *O. Ellis, Jr.,* for appellant.—An instrument if void or invalid on its face can not be made good by averments, and the crime of forgery can not be predicated thereon. People v. Harrison, 8 Barb. (N. Y.), 560; Costley v. State, 14 Texas Crim. App., 156; State v. Briggs, 34 Vt., 501, and cases cited in the opinion.

The indictment charged no offense against the laws of the State: Hall v. State, 55 Texas Crim. Rep., 267, 116 S. W. Rep., 808, and cases cited in the opinion.

The instrument must purport to be the act of another, and the indictment must so allege: Forcy v. State, 55 Texas Crim. Rep., 545, 117 S. W. Rep., 834; id., 120 S. W. Rep., 1198; Edwards v. State, 53 Texas Crim. Rep., 50, 108 S. W. Rep., 674.

The inuendo or explanatory averment must be in the purport clause of the indictment, citing same authorities.

An inuendo averment can not enlarge or point out the effect of

language beyond its natural and common meaning: Cagle v. State, 39 Texas Crim. Rep., 109, 44 S. W. Rep., 1097; Head v. State, 72 S. W. Rep., 394; Wilson v. State, 75 S. W. Rep., 504.

On the question of variance: Forcy v. State, 55 Texas Crim. Rep., 545, 117 S. W. Rep., 834; Fischl v. State, 54 Texas Crim. Rep., 55, 111 S. W. Rep., 410; Edgerton v. State, 70 S. W. Rep., 90; Williams v. State, 47 Texas Crim. Rep., 605, 85 S. W. Rep., 800.

On question of insufficiency of indictment: Westbrook v. State, 23 Texas Crim. App., 401, 5 S. W. Rep., 248, and cases set out in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This is the third appeal of this case. On the last trial from which this appeal is prosecuted, had in the District Court of Caldwell County on the 10th day of November, 1909, appellant was convicted and his punishment assessed at confinement in the penitentiary for a period of three years.

The important question for decision in the case is as to the sufficiency of the indictment which is assailed from many angles, and as related to this perhaps the most important question is whether any indictment could be predicated on the instrument alleged to have been forged. As the decision may become important in the future as a precedent, we set out the indictment in its entirety. It is as follows:

"The grand jurors, for the county of Caldwell, State aforesaid, duly organized as such at the October term, A. D. 1909, of the District Court for said county, upon their oaths in said court present that on or about the 10th day of June, A. D. One Thousand Nine Hundred and Eight and anterior to the presentment of this indictment, in the county of Caldwell and State of Texas, R. Jacobs and Sons was then and there a firm composed of the following members, to wit: R. Jacobs, J. G. Jacobs and Leon Jacobs, the said firm then and there being engaged in the mercantile business and having for sale goods, wares and merchandise for cash and on credit; and that Harvey Roamell did then and there have credit with said firm as aforesaid and that on or about the 10th day of June, A. D. 1908, Isaac Forcy, alias Will Jones, did then and there unlawfully, wilfully and knowingly and fraudulently pass as true to the said R. Jacobs, a member of said firm aforesaid, thereby passing to said R. Jacobs and Sons a false and forged instrument in writing which had theretofore been made without lawful authority, and with intent to injure and defraud and was then of the tenor following:

" 'June the 10, 1908
to Mr. R. Jacobs & sons
please fill this oder for me
17 $ 35 c Harvey romal.'

"That in said false and forged instrument aforesaid, if true, the term 'Mr. Jacobs and Sons' was intended for and meant R. Jacobs and Sons; that the word, to wit: 'oder' in said instrument aforesaid was intended for and meant the word 'order;' that the figures and characters, to wit: 17 $ 35 c in said instrument aforesaid was intended for and meant ($17.35) seventeen and 35/100 Dollars of the value of seventeen and 35/100 Dollars; and the name, to wit: 'Harvey romal' in said instrument was intended for and meant the name 'Harvey Roamell,' all of which the said instrument aforesaid, if true, meant and was intended for an order from Harvey Roamell aforesaid upon R. Jacobs and Sons aforesaid in favor of the bearer thereof then and there the said Isaac Forcy, alias Will Jones, whereby the said R. Jacobs and Sons should deliver goods, wares and merchandise to the value of $17.35 to the bearer of said instrument in writing as aforesaid then and there Isaac Forcy, alias Will Jones, and the said Harvey Roamell then and there becoming liable in payment therefor to said R. Jacobs and Sons and which said instrument in writing, the said Isaac Forcy, alias Will Jones, then and there well knowing to be false and forged did then and there pass the same as true with intent to injure and defraud against the peace and dignity of the State."

On the trial it was shown that the firm of R. Jacobs and Sons was composed of R. Jacobs, J. G. Jacobs, and Leon Jacobs, and that they were engaged in the mercantile business in the town of Luling, in Caldwell County, Texas, and that I. Mason was a clerk employed by said firm on the 10th day of June, 1908, when the transaction occurred out of which this prosecution grew. That on this day appellant, Isaac Forcy, came into the store of R. Jacobs and Sons and represented himself as Will Jones, and presented to them the written order copied in the indictment, representing to R. Jacobs that it was an order given on the firm of R. Jacobs and Sons by Harvey Roamell. It appears that Mr. Jacobs of that firm was unable to read, and thereupon handed the order to Mr. Mason with instructions to fill same, and that same was filled, and appellant received the goods, wares, and merchandise to the value of $17.35, and that the amount of the order was charged to Harvey Roamell. It was shown that Roamell had not signed the order in question, nor had he authorized anyone to sign his name to same, and that he had never seen such an order, and further, that he had credit with R. Jacobs and Sons, and that he did not even know appellant.

While many special objections were made to the sufficiency of the indictment, we think the substantial question in the case is, could this instrument be the subject of forgery? If this is answered in the affirmative, we think the allegations in the indictment sufficiently explanatory of the purport of the instrument and of the fact which would give it validity. There is in the books much curious learning

on the subject of forgery, and the office of the tenor and purport clauses in the indictment for this offense have been refined upon by courts until it is sometimes difficult for one to grasp and comprehend the office of either, and these refinements have sometimes, it seems to us, gone to the extent of overshadowing and dwarfing the substance of the matter required to be alleged. What instruments may be the subject of forgery has also quite frequently received judicial interpretation. These instances and illustrations are numerous and not always wholly consistent. We think in later times the niceties of pleading in prosecutions for forgery have not always been recognized; that the trend of modern decisions is to look rather to the substance than to the form that such instruments may take. We can not be unmindful of the fact that with the progress of civilization and the frequency in commerce with which business is transacted by notes, bills, and letters of credit, that it is essential to the protection of the citizen and the integrity of commerce, that a reasonable and sensible rule in prosecutions for forgery should be established. In olden times trade was either a matter of barter or for money in hand. In these times, as we know, but a small percent of commercial transactions are carried on and completed in any other form than by note, bond, checks, orders and drafts. While having due regard for the safety of the individual citizen who may be prosecuted for forgery of any of the manifold instruments conveying or undertaking to convey moneys and property, it is essential that at least some fair regard shall be had to the protection of the great body of our people who are interested in the honesty and integrity of these instruments. It has everywhere been held, under any view that may be taken of the case, that an instrument void on its face can not be made the subject of forgery. Such was the case of Howell v. State, 37 Texas, 591. The instrument there considered was as follows: "2 hides $4.00/100 Sitman." This instrument, it is correctly held, could not be the subject of forgery in that it was addressed to no one, undated, signed by no one, did not purport to affect any financial obligations or to transfer any property. This case received at least a qualified approval in the case of Anderson v. State, 20 Texas Crim. App., 595. There the instrument sought to be made the subject of forgery was in this language: "George Woods: Martin Baysinger says to let Wiley Anderson have $10 worth of goods, and he will stand for it." Considering this instrument the court says: "Now, would the instrument in question here be proof in any legal proceeding? We do not think it would without the aid of extrinsic evidence It is signed by no one. It does not show whose act it is. It merely states what Martin Baysinger said to another person, without disclosing who that person was. It is without date. If it were proved that Baysinger himself wrote the instrument, or that he authorized another to write it, it would be a guaranty upon which he would be liable. But we understand the rule to be that the instrument must be such upon

its face that, if it were genuine, it would be evidence of the facts it
sets out." This case was in Rhudy v. State, 42 Texas Crim. Rep.,
225, distinguished and in effect overruled, and in the still later case
of Huckaby v. State, 45 Texas Crim. Rep., 577, it is still more
decisively and effectively overruled. It is not the law of this State
that an instrument must on its face, in the absence of extrinsic and
explanatory averments, of necessity import a financial obligation
before it can be made the subject of forgery. On this question
Judge Henderson, speaking for the court, says: "Appellant also
questions the indictment because it does not import an obligation
on its face, and if it was the subject of forgery this should be shown
by extrinsic and explanatory averments. It is the rule in this State,
where the instrument does not show on its face that it imports an
obligation in regard to money or property, but is the subject of for-
gery, and can be shown to be such by extrinsic averments, that these
extrinsic or explanatory averments must be alleged." Cagle v. State,
39 Texas Crim. Rep., 109; Womble v. State, 39 Texas Crim. Rep.,
24; Crawford v. State, 40 Texas Crim. Rep., 344; Colter v. State,
40 Texas Crim. Rep., 165; Black v. State, 42 Texas Crim. Rep.,
585. In the case of Kennedy v. State, 33 Texas Crim. Rep., 183,
the whole general subject of imperfect and incomplete instruments
came before this court, where Judge Davidson, in reviewing the
authorities, says: "Instruments of writing may create pecuniary
obligations, affect property in some manner, and be the subject of
forgery, without being directed or addressed to any particular per-
son. This question was fully investigated in the unreported case
of Dixon v. The State (decided by the Court of Appeals of Texas
at its Austin term, 1889, opinion by White, P. J., 26 So. W. Rep.,
500). In Roscoe's Criminal Evidence it is said: "The prisoner
was indicted for uttering a forged instrument for the delivery of
goods, in words and figures following: 'Gentlemen: Be so good
as to let bearer have 5½ yards of blue to pattern, etc., and you will
oblige W. Reading, Mortimer St.' The request was not addressed
to anyone. The prisoner being convicted, the recorder respited the
judgment, to take the opinion of the judges on the question whether,
as the request was not addressed to any individual person by name
or description, it was a request for the delivery of goods, within
the words and true intent of the statute. All the judges who were
present at the meeting held the conviction right. Rosc. Crim. Ev.,
555, 556, 583; Rex v. Carney, 1 Moody Crown Cas., 351. In Reg.
v. Pullbrook, 9 Carrington & Payne, 37, the judges held that an
instrument merely specifying the goods may be shown to be a request
by the custom of the trade. See Reg. v. Rogers, id., 41; Reg. v.
Snelling, 1 Dears. Crown Cas., 219. In Snelling's case, supra, the
following instrument was held to be the subject of forgery, though
addressed to no one: 'Sirs: Please to pay to the bearer, Mrs. J.,
the sum of 854£. 10s. for me. James Ramsey.' In Noakes v. The

People, 25 New York, 382, it was said: 'It is insisted on by the counsel for the prisoner, in support of the first request, to charge that the instrument set out in the indictment is not upon its face the subject of forgery, as it is not addressed to anyone. If it be essential that an order or request for delivery of goods, to make it the subject of forgery, should on its face be directed to a particular person, there then would doubtless be force in this objection. A reference to the language of the section of the statute would seem to indicate that there is not much force in this argument. . . . The paper under consideration would therefore seem to fall within the very words of the statute, and is precisely of that character which the Legislature, by the forgery of and the passing or uttering of which, intended to subject the offender to indictment and punishment.' Over objection that it was addressed to no one, the following order was held in Tennessee to be the subject of forgery: 'May: Let Lorie Rogers have nineteen ($19.00) dollars in goods, and charge to me. W. C. Pell.' Peete v. The State, 2 Lea, 513; Whart. Crim. Law, secs. 680-695. Mr. Desty says: 'An order is subject of forgery, as an order for payment of money, though no consideration be expressed; and a writing not addressed to any particular person may be an order for the payment of money;' and further, that 'an order for the delivery of goods is subject to forgery, although not addressed to any one, or a request to deliver goods to bearer.' Desty Crim. Law, pp. 606, 607, sec. 150, and notes 1-3, for numerous cited authorities; The State v. Baumon (Iowa), 2 N. W. Rep., 956. See also Hendricks v. The State, 26 Texas Crim. App., 176; Dovalina v. The State, 14 Texas Crim. App., 334. If the instrument affects property, it is the subject of forgery. Alexander v. The State, 28 Texas Crim. App., 186. In the case before us, whether the instrument was or was not addressed to the treasurer of Harrison County is not material—does not affect the validity of the document."

The true rule on this subject is thus tersely stated by Judge Hurt in the case of Fonville v. State, 17 Texas Crim. App., 368: "Again, it is not required that the instrument, if true, should in fact discharge or defeat the obligation; it will be the subject of forgery if its tendency is such." We have found no better statement of the general rule than that contained in the 13 Eng. & Am. Ency. of Law, p. 1093, where it is said: "An instrument which is void on its face is not as a general rule the subject of forgery, because it has not the capacity of effecting fraud. The rule, however, is subject to this qualification: that if the instrument does not appear to have any validity or show that another might be injured by it, but extrinsic facts exist by which the holder might be enabled to defraud another, then the offense is complete and an indictment averring the existence of the extrinsic facts will be sustained." Now, we know that in this case the instrument was the means of defrauding R. Jacobs and Sons. In view of the conditions existing at the time it

was well designed to have this effect. R. Jacobs and Sons were merchants and doing, as the facts show, a credit business. Harvey Roamell had credit with them. Appellant by his own conduct construed this instrument to be an order on R. Jacobs and Sons for merchandise. This, in view of the situation of the parties, was the only construction that could intelligently be given to the instrument. While not in terms made payable to bearer or to appellant, it is in effect an order payable to bearer in that from the fact that Roamell sent it, it is certain that the goods were not to be delivered to him, and the order could be made effective only by delivering the merchandise to the person presenting the order. It was, therefore, to all intents and purposes an order payable to bearer. That it was an order for goods and not for the payment of money, is a fair inference not only from the situation of the parties, but from the nature of the instrument itself. We think that anyone could understand that where an instrument such as this comes to a merchant with the request to fill 'an *order,* that it would not be understood to be a request to pay money, and when this is interpreted in the light of the fact that R. Jacobs and Sons were merchants and not bankers, it becomes even more apparent. Again, it is suggested that there is no promise or obligation in the instrument itself on the part of Roamell either to pay the money or to make himself responsible therefor. The answer to this is that it is well settled in this State, and, indeed, is the universal rule founded on the most obvious equity, that where one surrenders property or pays out money on request and for the benefit of another, that the law implies a promise and obligation of payment. Broad v. City of Paris, 66 Texas, 119. If we are correct in these views, it must follow that the instrument is such a one as could be made the basis of forgery, and if this much be conceded, it seems clear that the explanatory averments are amply sufficient to sustain the indictment.

2. Again, it is averred that there is a variance between the instrument set out in the indictment and the one produced on the trial. This matter is not presented in such manner as to be the subject of review. The instrument made the subject of forgery is set out in haec verba in the indictment. In the statement of facts we find the following: "The instrument alleged to have been forged was then offered in evidence and identified by I. Mason and that said firm of R. Jacobs and Sons was doing business on the 10th day of June, A. D. 1908, in Luling, Caldwell County, Texas."

There is also a bill of exceptions in the record reciting the fact that "appellant requested the court in writing to affirmatively instruct the jury to acquit the defendant on the ground that the evidence fails to support the allegations in the indictment (all of which more fully appears in the defendant's motion to instruct the jury to acquit) and the court after considering said motion overruled the same." In the absence of any description of the instrument in the statement

of facts different from that as set out in the indictment or a finding
of the court to the effect that there was a variance, we would not be
authorized to presume such variance from the mere statement of
the claim that there was such in motion for new trial. It has been
many times held that a mere statement of a fact in motion for new
trial or in bill of exceptions is not the equivalent of finding that the
fact so stated is true.

We have been much interested in the discussion of the questions
involved by counsel for appellant. They have exhausted the author-
ities on the subject, but after a careful study of this matter, and a
very careful consideration of the case we have come to the conclusion
that the appeal is without merit, and that the judgment of conviction
ought to be affirmed as it is now done.

*Affirmed.*

McCord, Judge, not sitting.

[No motion for rehearing filed November 11, 1910.—Reporter.]

