## M. T. Ritter v. The State.

### No. 3526. Decided May 12, 1915.

**1.—Forgery—Indictment—Possession of Forged Instrument—Pleading.**

An indictment must be tested by itself under the law as a pleading; it can be neither supported nor defeated as such by what evidence is introduced on the trial, and when tested by this rule, the indictment for forgery was sufficient and that the instrument alleged was one showing a pecuniary obligation, the same was sufficient.

**2.—Same—Explanatory Averments—Indictment.**

Where, upon trial of forgery, the indictment made the necessary explanatory averments of the alleged forged instrument, the same was sufficient. Following Chappel v. State, 58 Texas Crim. Rep., 52, and other cases.

**3.—Same—Sufficiency of the Evidence.**

Where, upon trial of forgery and having a forged instrument in possession with intent to use in passing, the evidence sustained the conviction, there was no reversible error.

**4.—Same—Charge of Court.**

Where, upon trial of forgery, the court gave a charge applicable to the facts of the case, there was no reversible error.

**5.—Same—Charge of Court—Practice in District Court.**

It is not necessary for the court to tell the jury what the statute is and lay down general principles of law, and where upon trial of forgery the court's charge required the jury to believe every single fact necessary to show defendant's guilt and was otherwise sufficient, there was no reversible error.

**6.—Same—Evidence—Incorporation.**

Where, upon trial of forgery, defendant pleaded not guilty and failed to file a plea under oath that the alleged company was not duly incorporated, it was not incumbent upon the State to prove such incorporation. Following White v. State, 61 Texas Crim. Rep., 498, and other cases.

**7.—Same—Variance.**

Where the indictment alleged that one S. Naylor had authority to issue a certain discharge certificate, which was made a part of the indictment, and the contention that there was a variance in the name between the allegations and the proof was not borne out by the record, there was no error. Following Feeny v. State, 62 Texas Crim. Rep., 585, and other cases.

Appeal from the District Court of Anderson. Tried below before the Hon. John S. Prince.

Appeal from a conviction of forgery and having a forged instrument in possession, etc.; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*A. G. Greenwood,* for appellant.—On question of insufficiency of the indictment: Hanks v. State, 54 S. W. Rep., 587; Westbrook v. State, 23 Texas Crim. App., 401; Horn v. State, 68 Texas Crim. Rep., 89, 150 S. W. Rep., 948; Bagley v. State, 63 Texas Crim. Rep., 607; Pelton v. State, 60 Texas Crim. Rep., 412, 132 S. W. Rep., 480; Joiner v. State, 87 S. W. Rep., 1039; Chappell v. State, 58 Texas Crim. Rep., 52; Campbell v. State, 35 Texas Crim. Rep., 182; Fite v. State, 34 S. W. Rep., 921; Womble v. State, 44 S. W. Rep., 827; Crayton v. State, 73 S. W. Rep., 1046.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of the sufficiency of the indictment: Costley v. State, 14 Texas Crim. App., 156; Fonville v. State, 17 id., 368; Dooley v. State, 12 id., 549; Alexander v. State, 28 id., 186; Scott v. State, 40 Texas Crim. Rep., 105; Plemons v. State, 44 id., 555.

On question of definition of forgery and court's charge: Smith v. State, 32 S. W. Rep., 696.

On question of negotiable instrument: 19 Cyc., 1372.

PRENDERGAST, PRESIDING JUDGE.—The appeal in this case is from a conviction under an indictment in two counts,—the first charging forgery, the other for knowingly having a forged instrument in his possession with intent to use and pass it.

The indictment is unusually lengthy. It occurs to us that it will be proper, if not necessary, to give the substance of the indictment, which we will endeavor to do without copying it literally. After the necessary usual allegations of the beginning, it avers:

That on October 8, 1914, and for years prior thereto and continuously since then, the International & Great Northern Railway Company was and is a railway company chartered and incorporated according to the laws of Texas.

That on October 10, 1914, by an order of the United States District Court for the Southern District of Texas, by the order of the judge thereof, all of the properties and franchises of said railway company were placed in the hands of Baker and Lyon as receivers, who were then duly appointed by said court as such receivers, and that they as such immediately qualified and took possession of all of said property and franchises, and from and after that date have had and still have possession thereof, operating said railroad and the machine shops and other appurtenances thereto belonging. That in such operation said receivers adopted and used certain blank forms, known as discharge certificates, and furnished them to their agents and especially to F. Naylor and W. T. B. Hanson to be used by them in paying off dis-

charged employes, which said blank form is in form, words, and figures, as follows:

Will Appear on Pay Roll for the month of...........................................

International & Great Northern Ry. Co............................................................................191........ 29107.

Discharge Certificate—Not Negotiable.  To................................................................Dr.   ................................Div.

| | | | |
|---|---|---|---|
| ............Hours, at............... | .............. | ...... | · For services rendered during month of...........................191........ as |
| ............Days, at................ | .............. | ...... | .....................at or on.................., under...............(title)................... |
| ............Miles, at................ | .............. | ...... | I certify that this Certificate is correct: ǀ Approved: |
| ............Trips, at................ | .............. | ...... | ..........................................  ........................................... |
| ............................. | .............. | ...... | Countersigned: |
| ............................. | .............. | ...... | Payable only when countersigned by:  ...................... |
| Amount Less Deductions for, | | | ..... ................... ........ |
| ........................ $......... | .............. | ...... | Received............................191........ of I. &. G. N. R'Y |
| ............................. | .............. | ...... | Co. the sum of................................................Dollars, $....................... |
| ............................. | .............. | ...... | in full for services rendered during the Month of..........................., 191........, as above stated. |
| Hospital fees.................. | .............. | ...... | ..............................................: ........................................... |
| Balance due................... | $............. | ...... | Witness. (Signature.) |

(This form is in print.)

That on October 8, 1914, said Naylor was timekeeper for said receivers, and as such it was his duty to use said blank form and to state thereon, preceding the word "Hours" the number of hours which any discharged employe had worked for said receivers, and preceding the word "days" to place the number of days service performed by such employe, and in the blank following "days" in the column provided for stating amounts, to state and show the amount of money in figures to which such employe would be entitled; and to state, following "hospital fees," the amount to be deducted from such total sum as hospital dues; and following "balance due" and next to the dollar mark, to show the amount due such employe by the receivers, after making proper deduction; and at the top or beginning of said blank, to fill in by showing the postoffice and date and to fill in preceding "Div.," which meant "division," the word indicating in what division such labor had been performed. And in the next blank the month during which the service was rendered and the year and the capacity in which such employe worked and after so preparing such certificate, to properly certify, over his signature, that the certificate was correct.

That after said Naylor had so prepared the certificate it would be payable only when countersigned by said Hanson, who was chief clerk to the superintendent of machinery, and it was his, Hanson's, duty, and he had authority to countersign such certificate, thus confirming and showing that the receivers would then owe and be bound to pay to the person in whose favor it was made out the amount of money as stated in the appropriate blank by said Naylor.

That while said form shows that the account of such employe was wages to be made out against said railway company as debtor, yet, in truth and in fact, when such certificate was filled out as indicated and as the one was filled out and forged as hereinafter set out, it was intended to, and if made out by the said Naylor and countersigned by Hanson, it at once became a binding and pecuniary obligation and demand against said receivers for the sum stated therein.

That said Ritter on October 8, 1914, in Anderson County, Texas, did then and there, without lawful authority and with the intent to injure and defraud, wilfully and fraudulently make out a certain false instrument in writing purporting to be the act of said Naylor and Hanson, which said false instrument is to the tenor following:

Will appear on Pay Roll for month of.............................................................................

International & Great Northern R'y. Co.  Palestine 10/8 1914  21400

DISCHARGE CERTIFICATE—Not negotiable  To J. P. Philips  Dr.  Gulf Div.

| | | | |
|---|---|---|---|
| 270 Hours,................................. | 116 | 10 | For services rendered during the month of Sept., 1914, as Mach. at or on...................., under........... (title) SUPT. of MACHINERY. |
| 30 Days,..................................... | .................. | ........ | |
| ..............Miles............................. | .................. | ........ | I certify that this certificate is correct:  Approved: |
| ..............Trips............................. | .................. | ........ | F. Naylor.  Supt. of Machinery. |
| .............................................. | .................. | ........ | Payable only when countersigned by:  Countersigned: |
| Amount........................... Less Deductions for, | | | W. T. B. Hanson  W. T. B. Hanson |
| ..........................$........................ | | | Received....................................191........ of I. & G. N. Ry. Co., the |
| .............................................. | | | sum of Hundred Fifteen.......................60 Dollars, $115.60 in full for services during the month of Sept., 1914, as above stated. |
| .............................................. | | | |
| Hospital Fee........................ | | 50 | ...............................................  ........................................... |
| Balance Due,.................... | $115 | 60 | Witness.  (Signature.) |

(In making the alleged forged certificate, a precise duplicate of the form first above copied was used. The original indictment has been sent up and is a part of the record herein. In this place where we have just copied is the original claimed forged instrument itself,—not merely a copy of it. The indictment proceeds.) That in committing said forgery said Ritter used one of the blank discharge certificates as above set out and filled in the blanks as follows:

At the beginning he wrote, "Palestine, 10/8," and following "191.." he wrote the figure "4," by which he meant and made the said instrument to mean, "Palestine, October 8, 1914." Preceding the abbreviation "Div." he wrote "Gulf," by which he meant and made said instrument to mean "Gulf Division." He used the abbreviation "Mach.," by which he meant and made said instrument mean "machinist"; preceding the word "Hours" he wrote the figures "270," by which he meant and made said instrument mean that J. P. Philips, whose name he placed in said certificate as debtor, had worked in the machine shops of said railway company, then being operated by said receivers, 270 hours. Preceding the word "days" he wrote "30," by which he meant and made

said instrument mean that said Philips had worked as a machinist in the shops of the railway company for said receivers 30 days; in the blank for stating the amount following "30 days" he wrote in the column for dollars "116," and in the column for cents, "10," by which he meant and made said instrument mean that said receivers for said 30 days labor were indebted in a gross sum to Philips of $116.10. Following "hospital fees" he wrote "50," by which he meant and made said instrument mean that 50 cents should be deducted from said gross sum as hospital fee. In the column stating the amount and following the words "Balance Due" he wrote in the column for dollars, "115," and in the cents column "60," by which he meant and made the instrument mean that the balance due by said receivers to. said Philips was $115.60; that he signed the name of Naylor following the words "I certify that this certificate is correct," by which he meant and made the instrument mean that Naylor, timekeeper for said receivers, had signed said certificate. Following the word "countersigned" he signed "W. T. B. Hanson," by which he meant and made said certificate mean that it had been duly signed by said Hanson, chief clerk to the superintendent of machinery for said receivers; that the expression in said instrument, "International & Great Northern R'y Co.," was intended to mean and did mean said International & Great Northern Railway Company.

That for the purpose of paying off employes and furnishing them a proper demand against said receivers for the sum due by the receivers to such employes for labor performed, said Naylor, as timekeeper, and said Hanson, as chief clerk to the superintendent of machinery for said receivers, were fully authorized by the receivers to issue discharge certificates such as the one last above set out and purporting to be signed by them, and in so doing for and in behalf of said receivers, said Naylor and Hanson had full authority to use the blank form first above quoted as a discharge certificate and to issue such certificate in the manner and form in which it was made by said Ritter, and if they had executed the same in the manner and form in which the said Ritter executed the one last above set out, such certificate would have created a pecuniary obligation and liability against said receivers for the sum of $115.60, against the peace and dignity of the State.

This completes the first count in the indictment. The second count is a counterpart or literal copy of the first, except that instead of the allegations in the second charging forgery, they were pertinent and clear, charging that he knowingly had said forged instrument in his possession with the intent to use and pass the same as true.

Appellant made a motion to quash said indictment on many grounds. We will summarize and state the substance of such of them as he now urges:

1. That the first form copied is directly contradictory of the instrument alleged to be the forged discharge certificate in this: "Upon the latter is stamped in red ink opposite the word *title,* the words *Supt. of Machinery* which do not appear in the blank form first set out.

And in the alleged forged instrument is stamped in red ink the words *Supt. of Machinery,* and above the same is a line for a signature, and above said line is the word *approved,* which does not appear in the form which it is alleged the agents of the receivers were authorized to issue. Wherefore, there is an irreconcilable conflict in the two allegations."

2. The alleged forged instrument could not be the subject of forgery because upon its face it shows it is not a complete instrument in that it shows that it is not completed if true until the blank line opposite the word *title* was filled in, thereby showing the department by which it was issued and approved by signing and filling in the name of the superintendent of machinery above said last named words.

3. That the instrument shows upon its face it is not an ordinary instrument used in commercial transactions. Hence, it was necessary to explain all of the figures, abbreviations and technical terms therein, as was undertaken, but the following technical terms, blanks and signatures and words used are unexplained in the indictment, viz: "At or on........ under........ (title) Supt. Machinery.

Approved,

.......................
Supt. of Machinery."

4. That said instrument is not a pecuniary obligation, and if true, could not be enforced against said receivers, even though the indictment alleges it was authorized by the receivers and intended to be a pecuniary obligation binding upon them as such, the allegation not being supported by the instrument but directly contradicted thereby, and neither the names of the receivers nor the word "receivers" appear anywhere therein.

The indictment and each count thereof must be tested by itself under the law, as a pleading. It can neither be supported nor defeated as such by what evidence is introduced on the trial. Thus tested we think there can be no question but that the indictment was sufficient so far as appellant's fourth ground attacking it is concerned. By the allegations thereof there can be no question but that the receivers, even if that were necessary, are shown to be liable and could be held liable on said instrument if, as forged, it had been a true and genuine instrument.

There is nothing, either in the allegations of the indictment or in the printed form, or in the forged instrument itself, which in any way made it necessary to explain the words and blanks which appellant quotes in his third ground to quash the indictment. The allegations of the indictment fully and completely explain every word, blank and contraction of words which were necessary and proper, and made it unnecessary to make any further or other allegation explaining the said words, blanks and contraction of words, complained of by appellant. We have examined the cases cited by appellant on this point and are clearly of the opinion that the allegations in the indictment in this

case must have been drawn with reference to these authorities, for it meets them in every particular. Instead of being authorities in appellant's favor, we think they are against him. They are: Joiner v. State, 48 Texas Crim. Rep., 360, 87 S. W. Rep., 1039; Joiner v. State, 46 Texas Crim. Rep., 408, 80 S. W. Rep., 531; Chappel v. State, 58 Texas Crim. Rep., 52; Womble v. State, 39 Texas Crim. Rep., 24; Rollins v. State, 22 Texas Crim. App., 548; Wilson v. State, 75 S. W. Rep., 504; Crayton v. State, 45 Texas Crim. Rep., 84, 73 S. W. Rep., 1046; Crayton v. State, 47 Texas Crim. Rep., 88, 80 S. W. Rep., 839.

In order for appellant to make even plausible his first and second grounds to quash the indictment he undertakes to support his objections by citing some excerpts of the testimony which was introduced on the trial. This, as stated, can not be done. The pleading must be tested, when it is claimed it is insufficient, by the pleading itself. And whatever testimony was introduced on the trial cannot be referred to as either supporting the allegations or to show their insufficiency, so far as the validity of the indictment itself is concerned. It is true that the blank copy of the printed discharge certificate which is alleged to be the form authorized by the receivers, did not have in the face of it "Supt. of Machinery," and that the forged certificate did have these words therein, but that does not, as claimed by appellant, show any conflict between the two, but rather emphasizes the fact of how appellant or whoever forged the certificate, changed the original blank authorized by the receivers to that actually forged. The allegations about the respective documents make all this clear and distinct. So that there is no conflict, irreconcilable or otherwise, between the two so as to in any way show that the indictment is invalid.

Neither by the statute, nor any of the decisions as we understand them, is it required that an alleged forged instrument has to be a completed instrument in order to be the subject of forgery. In fact, as we understand both the statute and the decisions, the reverse of this is true. The statute says (art. 924, P. C.) that he is guilty of forgery who, without lawful authority and with intent to injure or defraud, shall make a false instrument in writing purporting to be the act of another *in such manner* that the false instrument so made would (if the fact were true) have created, etc., any pecuniary obligation or in any manner have affected any property whatever. Of course, if the instrument on its face shows to be a completed instrument that would be all that was necessary, but if it was not on its face a completed instrument, then and only then, is it necessary that such allegations must be made of extrinsic facts to show that if genuine it would be a valid instrument. Even if this instrument alleged to be a forgery should be held to be incomplete on its face, then every allegation which was necessary or proper to show how, if genuine, it was a forgery, has been made. We can not see what allegation on this subject has been omitted. In fact, we think that the allegations made are without doubt sufficient to show that this alleged forged instrument was executed in such a manner as to show clearly that if it had been true it would have created

a valid claim against the receivers as alleged. Forcy v. State, 60 Texas Crim. Rep., 206; King v. State, 42 Texas Crim. Rep., 108; Cagle v. State, 39 Texas Crim. Rep., 109; Scott v. State, 40 Texas Crim. Rep., 105. A great many other authorities might be cited to the same effect. None cited by appellant are to the reverse.

So that the court did not err in sustaining the validity of the indictment against all of appellant's objections thereto.

It is unnecessary to state the evidence. It was amply sufficient and complete to establish every fact essential to appellant's conviction. In fact, we can hardly see how it could be more perfect or complete to show this.

Appellant asked several special charges and made many objections to the court's charge. They are generally along the line of his attack of the indictment.

The court gave an apt charge requiring the jury to believe beyond a reasonable doubt every fact essential to his conviction which was necessary or proper, before they could convict him, and told the jury that if they did not so believe all these facts, to acquit him. In addition, he gave the reasonable doubt charge in appellant's favor. None of appellant's special charges, except the one which the court did give, should have been given.

Most judges in charging a jury tell them what the statute is and lay down general propositions of law pertinent to the case. This charge did not do that. Instead, the court told the jury at first what the charges preferred in the indictment were. Then in his charge required the jury, as stated, to believe every essential fact necessary to show his guilt before they could convict. It has many times been held by this court that it is unnecessary for the court to tell the jury what the statute is and lay down general principles of law. It has commended such form of charge without this.

Appellant filed no plea under oath that the International & Great Northern Railway Company was not duly incorporated. His only plea was an oral one of not guilty. Therefore, it was unnecessary to prove that said railway company was duly incorporated. White v. State, 61 Texas Crim. Rep., 498, 135 S. W. Rep., 563; Bunker v. State, this day decided.

As shown, the indictment alleged that F. Naylor had authority to issue such discharge certificates as are shown therein. As also stated, the original indictment herein and the original alleged forged instrument is made a part thereof, and we have carefully inspected it. He contends that what the State claims is the name of F. Naylor is not that, but that it is F. *C.* Naylur. We had occasion in Feeny v. State, 62 Texas Crim. Rep., 585, to discuss a matter precisely similar to this, and what we said therein fully applies to this case. It is unnecessary to further discuss the question. In our opinion, the name is not as contended for by appellant, but is as contended by the State. See also Gentry v. State, 62 Texas Crim. Rep., 497.

We see no necessity of taking up and discussing every question raised

by appellant. We have discussed the material and deciding questions, and are of the opinion that no reversible error is pointed out in this record. The judgment is, therefore, affirmed.

*Affirmed.*