**Jim VANDERBILT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 56834.**

Court of Criminal Appeals of Texas, En Banc.

March 22, 1978.

Rehearing Denied April 12, 1978.

Jim B. Brown, Canyon, for appellant.

Tom Curtis, Dist. Atty., and Bruce P. Sadler, Asst. Dist. Atty., Amarillo, for the State.

**OPINION**

ODOM, Judge.

This is an appeal from a conviction for capital murder. The jury returned affirmative findings on each issue submitted under Article 37.071(b), V.A.C.C.P., and accordingly, the punishment was assessed at death.

The evidence reflects that the deceased, Katina Moyer, was abducted by the appellant, a former Amarillo police officer, at gunpoint from an Amarillo high school at about 3:15 p. m. on April 1, 1975. She was

evidently handcuffed and was forcibly taken to appellant's house and subsequently was taken outside the city limits but within Potter County where appellant shot her in the back of the head. In view of our disposition of this appeal, further discussion of the facts will be limited to the events surrounding the interrogation of the appellant at police headquarters after he was taken into custody.

Appellant complains of the exclusion of evidence from the jury concerning an alleged deal used to induce him to confess. In brief, the record shows an oral confession on the evening of April 11, 1975, and a written confession in the early morning hours of April 12. The oral confession was ruled admissible and the written confession was excluded. We will first outline the evidence heard by the court on appellant's motion to suppress the oral confession, next note the trial court's ruling on the written confession as related to the oral confession, then detail the rulings on the evidence for the jury on the oral confession issue, and finally discuss the law on the matter and dispose of the issue.

### Evidence to the Court on the Oral Confession

Appellant filed a motion to suppress an oral confession that was obtained from him during the interrogation. During a *Jackson v. Denno*, 387 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) hearing conducted outside the presence of the jury, the following evidence was adduced. Officer Ed Foree testified that appellant was arrested when leaving a class at the police academy at about 6:00 p. m. on April 11, 1975. He was taken to the polygraph room at police headquarters and was read his *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 674 (1966) rights. Officer E. N. Smith took custody of appellant immediately thereafter and testified that he stayed with him from 6:00 p. m. until 9:00 p. m. and that appellant did not request counsel until 8:00 p. m. at which time he was allowed to contact an attorney of his choice. The attorney contacted by appellant declined to represent

him but did advise him of the nature of the charges about which he was being interrogated and further advised him to say nothing to the police. Smith further testified that as far as he knew appellant did not during this period of time attempt to call another attorney and never requested that one be appointed for him.

Officer Jimmy Boydston testified that he took custody of the appellant between 9:00 to 9:30 p. m., and immediately thereafter the appellant asked him some questions concerning the capital murder statute and the possibility of a deal being made to avoid the capital murder charge. Boydston testified that District Attorney Tom Curtis then came into the room and after Boydston had related to him what the appellant had been talking about, a deal was discussed. The terms were that if a signed written statement was given and was used in trial, then the State would not ask for the death penalty. Evidently at this point, the appellant was asked again by Curtis if he wanted an attorney, to which he replied that he did not but that he would like to see his wife. Once again, at this juncture, appellant was read his *Miranda* rights.

Boydston further testified that approximately thirty minutes later the appellant's wife arrived and talked with him for ten to fifteen minutes, and that after she had left the room Curtis handed the appellant a blank statement form and told him "that he could write it out as well as he could," referring to a written statement. At this point, according to Boydston's testimony, the appellant stated that he was not going to make a statement. To this, Curtis retorted that any deals or possible deals that had been considered were off and he asked if the appellant understood this to which he replied that he did.

The evidence reflects that Curtis then left the room and Officer Davis came in and made a statement to the effect that maybe a hundred policemen were working on this case and that they knew who did it and the only question remaining was why he had done it, referring to the appellant. Davis and Boydston testified that appellant then

began to confess. After listening for a few minutes, Davis left the room and returned fifteen or so minutes later with a typed statement which the appellant refused to sign. At this point, the appellant did request the presence of counsel and asked that one be appointed for him. Curtis was immediately apprised of the appellant's request and a few moments later came back into the room with Tabor Scott, a practicing attorney who had been appointed by Justice of the Peace Byrd to represent the appellant. Scott had arrived at the station house at about 9:30 to 9:45 p. m. and was allowed to see the appellant between 11:00 and 12:00 p. m.

Scott testified that he saw the appellant at about midnight, conferred with him for an hour, left on several occasions to meet with District Attorney Curtis, and that later in the evening had a meeting with Curtis, which Justice of the Peace Byrd, Officer Fields and a few other individuals attended. Although Scott declined to testify as to the subject of the conversation with Curtis, apparently believing that the attorney-client privilege would prevent him from doing so, a transcription of the conversation occurring at 2:35 a. m. on April 12, 1975, was introduced at pre-trial, including the agreement entered into by Curtis and Scott on behalf of the State and the appellant respectively, as well as the written signed confession with an agreement. These exhibits establish that a written confession was signed by the appellant at 3:00 a. m. on April 12, 1975 in which he confessed to the murder of the deceased. At the end of the written confession is contained the language:

> "that by confessing in writing and signing this written, voluntary confession to the murder I will not be in jeopardy of receiving a death penalty as punishment, upon my conviction for capitol (sic) murder, but will instead be punished only by life imprisonment for that offense."

The instrument states that it was executed at 3:00 a. m. on April 12, 1975. The transcription of the conversation between Scott and Curtis occurring at 2:35 a. m. on April 12, 1975, established that unless a signed written confession was produced in the capital case then the agreement was to have no effect.

The appellant took the stand at the *Jackson v. Denno* hearing and refuted most of the State's testimony. He testified that after the *Miranda* rights were read to him, at about 6:30 p. m. on April 11, 1975, he began asking for an attorney, and that he requested one approximately every ten minutes. He stated that, although there was no verbal response to his repeated requests, he was not in a position to get up and go to the phone. He testified that no one offered to let him go to a phone or offered to call an attorney for him until about 8:00 p. m. He stated that after he was shown a picture of the deceased he informed E. N. Smith that he did not want to talk to him about the case and again requested an attorney.

The appellant also testified that Davis made him a deal that if he would confess to the Moyer murder then Davis would take care of his wife, Davis evidently being in charge or having access to certain money in the police metro fund. The appellant stated that when he began confessing the deal with Curtis was still on, that it had not been withdrawn, and that the substance of the deal was that if he would confess to the crime then the death penalty would not be sought. The appellant testified that when Curtis wanted him to give the statement and when he refused Curtis became very angry and told him that the same deal would not exist tomorrow if the deal was not made then. Appellant stated that the oral confession was given to Officers Davis and Boydston because of the deals concerning the death penalty and the taking care of his wife. When Davis left the room to type up what the appellant had told him, and subsequently returned with a typewritten statement, appellant testified that the instrument was not complete, that it did not accurately depict what he had said, and thus he refused to sign the instrument.[1]

---

1. The written confession actually signed by the appellant in this case is not the instrument that

Davis handed him to sign shortly after he began to orally confess. The written confession

Officer Davis testified that, although he did tell appellant that he would do what he could to shield his wife from the press, that this offer was not made contingent on appellant giving a confession, but was rather made because they had been police officers together and "that there is a certain bond between police officers. . . ."

The *Jackson v. Denno* hearing testimony was extensive, and other witnesses testified relative to issues not necessarily germane to the present inquiry and thus their testimony will not be discussed. Based on the testimony presented at the hearing, the trial court ruled that the oral confession made by the appellant to Boydston and Davis was admissible and denied the motion to suppress.

### The Written Confession and the Oral Confession

At a pre-trial hearing, the trial court ruled that the written confession signed by the appellant at 3:00 a. m. on the morning of April 12 would not be admissible in the trial on the merits in the event the State sought to prosecute the appellant under a capital murder indictment, evidently on the ground that the written confession was a product of a palpably unlawful inducement.[2] Although the court stated that it would allow extensive examination of both prosecution and defense witnesses as pertained to any allegedly improper inducements surrounding the *oral confession,* the court took the position in its rulings and in fact instructed defense counsel:

"to introduce no evidence concerning any deal or alleged or supposed deal made after the oral confession was made."

### Evidence to the Jury on the Oral Confession

During the cross-examination of Boydston before the jury, defense counsel Brown

approached the bench and inquired of the trial court if it would allow him to go into the deal surrounding the written confession that had been earlier suppressed. The following colloquy in pertinent part resulted:

"THE COURT: You moved to suppress that [the written confession], and it is suppressed.

"MR. BROWN [Defense Counsel]: All right, Judge. I have not moved to suppress the deal that was made at 2:35 a. m.

"THE COURT: You cannot go into a written confession which has been suppressed on your motion. Now you have gone into the deal, whatever the deal.

"MR. BROWN: There was a deal made at 9:00 o'clock or 9:30; there is another one at 2:35 (a. m.).

\*     \*     \*     \*     \*     \*

"MR. BROWN: I didn't ask to suppress the deal, I asked to suppress the confession. I want to go into the deal.

"THE COURT: The deal at 2:30 you would not be entitled to go into because that happens after, after the oral confession has been made."

Subsequently during further proceedings out of the presence of the jury, the following exchange occurred:

"THE COURT: Now, I permitted you at that time, (during the *Jackson v. Denno* hearing) and I have since permitted you, to go into any kind of deal, whatever deals they are, leading up to the oral confession which has been admitted in evidence, and you (defense counsel) indicated to me that you intended to put into evidence matters involving deals with the District Attorney that occurred after the oral confession and that were involved concerning the written confession which has been suppressed on your motion, is that right?

"MR. BROWN: That's correct.

---

signed by the appellant and made a part of this record is the instrument executed at 3:00 a. m. on April 12, 1975. The shorter written instrument which appellant refused to sign was evidently misplaced and was not introduced at trial or any pre-trial hearing.

2. See generally *Fisher v. State,* Tex.Cr.App., 379 S.W.2d 900; *Wechsler v. State,* 172 Tex. Cr.R. 559, 361 S.W.2d 379.

"THE COURT: Now, on what basis do you intend to put that in?

"MR. BROWN: The State has entered evidence that they offered the defendant a deal sometime in the evening of April the 11th to sign a written confession. Then, they put in evidence that they immediately withdrew it and he thereafter immediately gave an oral confession based upon no deal whatsoever.

"Now, I want to show that the State did not in fact withdraw the deal, because the deal was still being talked about from approximately midnight until 2:35 a. m., at which time Mr. Curtis dictated the deal on a tape which was played here the other day, and later had it transcribed.

"I want the jury to be able to decide for itself whether in fact the deal was made, and if it was, whether or not it was withdrawn.

"If I am denied the right to show that the deal was still in effect from the time that it was made until 2:35 a. m., or whatever, then, the jury does not have the evidence with which to make that determination, the Court will have to cut me off short of that defense.

"It has allowed the State to show that they have withdrawn it, got an oral confession, entered the oral confession, and the only way that I can show that that deal was not withdrawn is by putting on evidence that it was still in effect at that time of the day.

"Now, I don't have anyone else, other than the defendant, that I can put up on that stand, besides police officers and members of the prosecution that asked about that, but there is written evidence before this Court, there is tape recorded evidence before this Court, two written instruments, a signed confession with the deal in it, a transcript of the deal, and a tape recording of the deal before this Court, which, surely to goodness shows the Court that that deal was still in effect at 2:35 a. m.

"I think the jury ought to see that so they can make their determination when they look at the Charge and determine the voluntariness of the confession.

\*  \*  \*  \*  \*  \*

"MR. CURTIS: First off, Your Honor, these are matters of law. At a pre-trial hearing on defense motion, the written signed confession that was at that time marked that came along at some 3:00 o'clock or so which is referred to in a tape recording that has already been played for the Court and transcribed, that written signed confession has been suppressed on Mr. Brown's motion, and it is not in this case, contrary to what Mr. Brown said, because he got it out way ahead of time by suppressing it. The Court granted his motion, and that is that.

\*  \*  \*  \*  \*  \*

"Now, the agreement on tape with the transcript, that the Court verified is before the Court for its consideration as a matter of law, to predicate the rulings that the Court is now fixing to make its rulings upon, its not a jury question, its a matter of law. And I understood yesterday the Court had ruled four or five or six times on it, all in the same way, and its in no way a proper matter for a jury.

"Now, these are matters that are in the record away from the presence of the jury, and they are irrelevant and immaterial to any fact issue that the jury is called upon to decide [3] in a capital murder case.

"They can be brought to the attention of any appellate court and there is a proper record made on that, and that's the proper way to handle this.

"MR. BROWN: Your Honor, may I point out that we, the defense, filed a motion to suppress the written confession; we also filed a motion to suppress the oral confession, which we were unsuccessful in, but the Court did suppress the written confession.

---

3. The voluntariness of a confession may be made a fact issue for the jury. Art. 38.22, V.A.C.C.P.

"Now, I'm not asking that the written confession be introduced in evidence, but neither did I ever ask this Court to suppress evidence of the deal that he made; I have never asked that, Your Honor, never before, and I'm not asking it now and I'm not asking that the statement be introduced, and I never asked that the fact be suppressed that I could not ask about an act performed by my client.

"He signed that confession, that's all I want to do. I don't want, the confession, I'm not asking the Court to change its ruling on that. I just want to show the jury that the prosecutor made a deal, made a deal at those early hours in the morning, still in effect, and that the Defendant carried out his part of the deal, that's all, no statement.

"Now, in order for that jury to be able to determine whether or not the deal was withdrawn, they need to see the whole picture, they don't need to see it cut off at 11:00 o'clock or whatever it is; they need to see it as it goes through. All I want to do is put somebody up here to show that a deal was made, to show that a statement was signed. . . .

"THE COURT: Under no circumstances will I permit the jury to know that there is a signed statement which they are not entitled to look at.

\*   \*   \*   \*   \*   \*

"The testimony on this case thus far is that any deal that was offered was withdrawn prior to the oral confession. For that reason, I will restrict the Defendant and I will instruct you to introduce no evidence concerning any deal or alleged or supposed deal made after the oral confession was made. That is the ruling of the court.

"MR. STORRS [Defense Counsel]: Your Honor, for the purposes of clarification of the record, we are not going to be entitled to introduce even evidence as impeachment evidence, now, not evidence that he signed a written statement, but evidence as impeachment evidence of a later deal that came up to impeach the

State's position that the deal was called off, we have to take that verbatim?

\*   \*   \*   \*   \*   \*

"MR. STORRS: I am not confronting the witness, I am not talking about pulling that statement out of the box at all. The confession is suppressed, we will not touch it with our hands, period, or talk about the confession.

"I am just asking if the court will allow us to offer evidence besides the confession of a later deal solely for the purpose of being impeachment evidence to impeach the State's position that the deal was called off and that he understood the deal was called off.

"MR. CURTIS: Could not be offered for impeachment in that event or in any event.

"THE COURT: I don't see how it could be."

Finally, after the State had rested, the appellant called attorney Tabor Scott and during cross-examination by the State Scott was asked whether he conducted any negotiations on the appellant's behalf with anyone, to which he replied yes. Defense counsel approached the bench and outside the presence of the jury argued to the court that the State had opened the door by asking the aforementioned question regarding negotiations concerning the deal and in that counsel was not permitted to see his client until after midnight, this obviously meant that Scott was referring to negotiations occurring *after* the oral confession. The following is thus reflected in the record:

"THE COURT: No, he didn't open the door.

"MR. BROWN: We can't ask him what the negotiations were, I don't suppose?

"THE COURT: You cannot.

"MR. BROWN: 38.24, I believe, Your Honor, applies both to the defense and to the State as well, and I request that the Court read it and that we have the same opportunity—

"THE COURT: I have done so.

\*   \*   \*   \*   \*   \*

"THE COURT: It is my holding that the question asked by the prosecutor was not sufficient to open the door to go into that situation.

"MR. BROWN: All right. Then I respect that order. Now, the one earlier, where they have gone into the deal and oral confession, 38.24 would open the door for us to go into the negotiations which occurred at 2:35 a. m. and the act by the Defendant in response to that, the act of signing the written confession, Your Honor.

"THE COURT: No, because those are two separate and distinct acts, you—

"MR. BROWN: The notes of Boydston, marked State's exhibit 46, were transcribed, typed on the statement verbatim, with the exception of the last two lines of it, and they have gone into the deal surrounding that, and that would be part of the additional negotiations where he eventually signed that statement.

"THE COURT: No, I disagree with you, Mr. Brown. I will not permit you to go into that.

"MR. BROWN: Note our exception, and we respectfully move this Court for a mistrial based upon the fact that the court is denying him his constitutional rights of cross examination of witnesses and the right to present evidence in his own defense.

"THE COURT: Which is denied.

"MR. STORRS: Are we not specifically going to be allowed to ask this witness what conversations—what negotiations he went into or he had concerning his client that night?

"THE COURT: Yes, that's my ruling.

"MR. BROWN: Note our exception."

*Discussion of the Law and Disposition of the Issue*

We understand appellant's position to be that he was deprived of his constitutional right to submit evidence to the jury in his defense on the issue of the voluntariness of the oral confession introduced at trial. He also relies on Art. 38.24, V.A.C.C.P. His basic argument is that the State was al-lowed to place before the jury the fact of the existence of a deal, the subsequent withdrawal or rescission of the deal and the fact that the appellant immediately thereafter orally confessed, without allowing him to put on evidence that the deal had not been withdrawn, but, to the contrary, was very much alive and had in fact been embodied in a written confession signed by him at 3:00 a. m. on April 12.

The State argues, as the court ruled, that evidence surrounding the events of the written confession signed by the appellant at a later time in the early morning of April 12 was irrelevant to the issue of whether the earlier oral confession was voluntarily made in that the oral confession was an independent and separate act from the written confession. The trial court also reasoned that since the appellant at a pre-trial hearing had successfully challenged the admissibility of the written confession on his own motion, he was thus precluded from presenting evidence concerning the events surrounding the written confession and the agreement entered into by District Attorney Curtis, Tabor Scott and the appellant later in the evening.

Without reaching the merits of whether the trial court erred in admitting the oral confession, we find reversible error in the court's action of refusing to allow the appellant the opportunity to develop evidence before the jury relative to the issue of the voluntariness of the oral confession.

■ Article 38.22, Section 2, V.A.C.C.P., in effect at the time of this trial, provided in part:

"Upon the finding by the judge as a matter of law and fact that the confession or statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the confession or statement was voluntarily made, the jury shall not consider such statement or confession for any purpose nor any evidence obtained as a result thereof."

Under this provision of the Code of Criminal Procedure, a defendant is allowed the opportunity to present evidence to the jury on the issue of the voluntariness of the confession which the State has introduced at trial against him. This statutory provision entitled the accused:

"to offer evidence before the jury as to the voluntariness of a confession despite the judge's earlier findings thereon to the contrary." *Ross v. State,* Tex.Cr.App., 504 S.W.2d 862, 864. See generally *Lopez v. State,* Tex.Cr.App., 384 S.W.2d 345; *Taylor v. State,* Tex.Cr.App., 498 S.W.2d 346, 348.

Furthermore, the general rule is:

"[A]ll material and relevant testimony on the question of the voluntary nature of the confession should be admitted . . . ." *Bownds v. State,* Tex.Cr. App., 362 S.W.2d 858, 860.

Article 38.24, V.A.C.C.P., provides:

"When part of an act, declaration or conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood or to explain the same may also be given in evidence."

This provision of our Code of Criminal Procedure was originally enacted in 1856 and has not been significantly amended since that time. In *Greene v. State,* 17 Tex.App. 395 (1885) referring to Art. 751 of the Code of Criminal Procedure of 1856, now Art. 38.24, V.A.C.C.P., it was stated:

"This article expands the common law rule with reference to such evidence. At common law, when a confession or admission is introduced in evidence against a party, such party is entitled to prove the whole of what he said on the subject *at the time of making such confession or admission* . . . But the above quoted article does not restrict the explanatory act, declaration, conversation or writ-

ing to the *time* when the act, declaration, conversation or writing sought to be explained occurred, but extends the rule so as to render such acts or statements admissible, if necessary to a full understanding of, or to explain the acts or statements introduced in evidence by the adverse party, although the same may have transpired at a different time, and at a time so remote even as to not be admissible as *res gestae*." 405–406

In *Greene,* supra, the State had introduced a statement of the defendant admitting that he had killed the deceased but objected to the introduction of a written statement made by the defendant the next day in which he stated that he had killed the deceased because the latter had raped his step-daughter. The Court in relying on Art. 751 (now Art. 38.24, V.A.C.C.P.) reversed the conviction and remanded the case for a new trial, holding:

"We think he (the defendant) was entitled to have it submitted to the jury for their consideration, in connection with his confession made the day before, and upon which confession the state relied for a conviction. Its credibility, and the weight to be given to it, were matters for the jury to determine. By the jury it might be wholly disregarded, or it might be credited, and if credited might properly influence them favorably to the defendant, mitigating the punishment, or reducing the grade of the homicide." at 407.

In *Roman v. State,* Tex.Cr.App., 503 S.W.2d 252, in discussing Art. 38.24, supra, we held:

"The purpose of this provision is to reduce the possibility of the fact finder receiving a false impression from hearing the evidence of only a part of the conversation, writing, act or declaration."

In the present case the appellant was prejudiced by the trial court's action in refusing to allow him to develop testimony before the jury concerning the transactions occurring later in the evening of April 12, 1975. Certainly, had the jury been cognizant of the 2:35 a. m. meeting between

District Attorney Curtis and Tabor Scott, the appellant's initial court-appointed counsel, and had they been aware that a deal had been discussed and in fact entered into between the parties in the early morning of the 12th of April, they could have concluded that the oral confession was in fact the product of an unlawful inducement, reasoning that the deal or offer by the State had in fact not been withdrawn when the appellant orally confessed.

The State contends that the oral and written confessions were independent and separate acts, arguing that evidence surrounding the written confession was irrelevant to the issue of whether the oral confession was voluntary. True, the jury might well have determined that the two confessions and the events surrounding each constituted separate acts and that the oral confession was not tainted by an impermissible inducement or promise. Nevertheless, Art. 38.22, supra, entitled appellant to present evidence to the jury on whether the oral confession was voluntary. This clear requirement of the statute controls even where the trial judge has made "earlier findings thereon to the contrary." *Ross*, supra.

We find it of little moment that the oral confession and events surrounding the same occurred earlier in the evening. In *Clewis v. State*, Tex.Cr.App., 415 S.W.2d 654, reversed on other grounds, *Clewis v. Texas*, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967), the defendant confessed three different times over a nine-day period. He challenged the admissibility of the third confession. At the trial a police officer was allowed to testify that after the defendant had signed one of the prior statements he stated:

"I feel like I can eat something now. I have that knot out of my stomach. I got it all straight with the Lord."

The Court held that pursuant to Art. 728, V.A.C.C.P. (now Art. 38.24, supra) the evidence was admissible as it

"related to *appellant's acts and statements during his interrogation* about the crime and was admissible on the issue of

the voluntary nature of the confession. Such testimony was in rebuttal of testimony offered by appellant on the question of the voluntary nature of his confession, and, *as a part of the same transaction,* was admissible under Art. 728, Vernon's Ann.C.C.P." (Emphasis added.)

Again, in *Clewis,* supra, the statements made by the defendant during interrogation occurring over a nine-day period which produced three written confessions were held to fall within the purview of Art. 728 (now Art. 38.24, supra) and were admissible, as being part of the same transaction in that it related to appellant's acts and statements during the interrogation. The interrogation process was viewed as being "the same transaction" even though several confessions were given over an extended period of time. See also, *Route v. State,* 168 Tex. Cr.R. 388, 327 S.W.2d 761, which recognized the rule that events after a confession may be considered on the voluntariness issue.

In light of *Clewis,* supra, and under both Art. 38.24, supra, which has been interpreted to expand the common law rule of completeness (*Greene v. State,* supra, see also 17 South Texas L.J. 105 (1975)), and Art. 38.22, supra, which entitles the defendant to present evidence on the issue of the voluntariness of a confession, *Ross,* supra, we hold the exclusion of the evidence appellant attempted to get before the jury constituted reversible error.

Furthermore, the fact that the appellant had secured suppression of the written confession does not dissuade us from this holding. If the *written confession* were based on a palpably unlawful inducement, it was incumbent upon defense counsel to challenge its admissibility in efficaciously representing his client's interests. Moreover, the fact that the defense secured its exclusion would not estop or prevent it from eliciting testimony or evidence of the existence of a deal or offer being made at a time subsequent to the oral confession. This could have been accomplished in the present case without introducing the written confession itself. In fact, the record reflects that defense counsel stated that they would not

introduce the written confession nor even elicit testimony concerning it, but did want to question witnesses relative to the 2:35 a.m. meeting and any negotiations or deals entered into by the State and the appellant. In that the interrogation of the appellant and the facts and events surrounding it in the present case constitute the same transaction, the events occurring subsequent to the oral confession but within the interrogation transaction relevant to the issue of the voluntariness of the confession were admissible.

The judgment is reversed and the cause remanded.[4]

VOLLERS, J., not participating.

---

4. Since the case has been disposed of by the grounds of error discussed, we need not discuss the other grounds. However, we note that the State introduced no evidence at the punishment stage of the trial. In the event of a re-trial, we call attention to the recent case of *Warren v. State*, 562 S.W.2d 474, on sufficiency of the evidence to support an affirmative finding to special issue No. 2 of Art. 37.071, V.A.C. C.P.