**Philip Carey BRASFIELD, Appellant,**

v. ·

**The STATE of Texas, Appellee.**

**No. 61871.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 13, 1980.

On Rehearing June 18, 1980.

Dennis W. McGill, Mark C. Hall, Lubbock, for appellant.

John T. Montford, Dist. Atty., and J. David Nelson, Asst. Dist. Atty., Lubbock, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

This is an appeal from a conviction for the offense of capital murder wherein the punishment was assessed at death. V.T. C.A., Penal Code Sec. 19.03 (1974), and Vernon's Ann.C.C.P. art. 37.071 (Supp.1980).

The indictment, the operative language of which is set out in the margin,[1] charged that appellant caused the death of Johnny Turner, Jr., in the course of committing the offense of kidnapping. He pleaded not guilty to the charge but the jury found him to be guilty and at the conclusion of the punishment hearing, the jury answered affirmatively the first two issues set out in Art. 37.071(b).

The indictment charged that the offense was committed in Lubbock County; venue was changed to Wichita County where the trial was held.

Since appellant's first ground of error challenges the sufficiency of the evidence to support the conviction, we summarize the

---

1. ". . . PHILIP CAREY BRASFIELD did then and there intentionally and knowingly cause the death of an individual, Johnny Turner, Jr., by asphyxiating the said Johnny Turner, Jr., by manner and means to the Grand Jurors unknown, and the said PHILIP CAREY BRASFIELD did then and there intentionally cause the death of the said Johnny Turner, Jr., in the course of committing the offense of kidnapping . . . ."

proof adduced by the State, noting that the defendant did not testify in person nor did he offer any witness in his behalf.

Our record shows, without dispute, that about 5 o'clock in the evening on October 26, 1977, Johnny Turner, Jr., a six-year-old black boy, was playing in the yard near his home in an apartment complex in Lubbock while his mother was preparing supper. Shortly thereafter, she went to call the boy to come inside, but he was not to be found in the area.

Teddy Robinson, a thirteen-year-old neighbor of Johnny, saw Johnny in a white pickup truck behind his house with an adult white male whom he identified as appellant.

Cecille Hunter, an adult school bus driver, testified that on the day in question at about 5:30 p. m., she was in a filling station near the home of Johnny. She recognized him as "a Turner boy" because of his resemblance to his father whom she knew. Johnny was then in a white pickup truck with an adult white male whom she identified as appellant. She watched as they drove away from the filling station in the direction of Yellow House Canyon, where Johnny's body was later found.

W. E. Davis, the operator of the filling station, corroborated Hunter's testimony as did Ray Dunn, an employee of Davis. Both of these witnesses identified appellant and his white pickup truck as well as the presence therein of a small black boy.

Lubbock lawyer, Warren Goss, without stating the reason or the circumstances, testified that he saw appellant in Lubbock between four and five in the afternoon of October 26, 1977.

Armando Ramirez, an acquaintance of appellant, said that appellant visited him at his place of work near Posey, a small town on U.S. Highway 84 between Lubbock and Slaton. This visit was about three in the afternoon and appellant was quoted as saying that he was going to Lubbock. Ramirez also testified that he and a fellow worker, Jerry Robinson, after getting off work, bought a six-pack of beer and went to a secluded spot on a country road where they drank the beer. This spot was close to Horseshoe Bend Road which leads into Yellow House Canyon. As they were leaving, they saw appellant coming down Horseshoe Bend Road from the direction of the canyon. He was alone in his white pickup truck and was driving at a high rate of speed.

Appellant stopped and the parties talked for a while and then they all went to appellant's home in Slaton. Robinson, Ramirez's co-worker, corroborated the testimony given by Ramirez.

Detective Sgt. Doyle Nelson of the Lubbock Police Department, was in charge of the search for the body and he testified in detail as to the lengthy search in the rugged canyon. Finally, in the forenoon of November 3, the body was discovered in the canyon not far from a dirt farm "turnaround" road. The body was partially covered by brush and the underclothing and trousers of the victim had been pulled down over his legs. The body was in an advanced state of decomposition and was infested with maggots.

Doyle testified to finding tire marks in the dirt on the farm road near where the body was found which matched those on appellant's truck.

Dr. Jose Diaz-Esquivel, a pathologist, testified that Johnny had died of asphyxiation but he could not determine the means used. There was a bruise on the head and face and numerous stab wounds on the body, the latter having been inflicted after death since there was no bleeding from the wounds. The decomposition of the body rendered it impossible for him to determine if the boy had been sexually molested.

Johnny's mother identified the shoes and several articles of clothing found on the body as items worn by Johnny when last seen at his home. Both of Johnny's parents testified that they gave no permission to anyone, including appellant, to take the deceased.

As noted earlier, appellant did not testify in his own behalf nor did he offer any witnesses or defense. The Court's charge,

which comes to us without objection, included a charge on circumstantial evidence.

We recognize and apply the rule that every circumstantial evidence case must necessarily be tested by its own facts to determine the sufficiency of the evidence. *Earnhart v. State*, 575 S.W.2d 551, 554 (Tex.Cr.App.1979); *Stogsdill v. State*, 552 S.W.2d 481, 486 (Tex.Cr.App.1977); *Carlisle v. State*, 549 S.W.2d 698, 703 (Tex. Cr.App.1977); *Baker v. State*, 447 S.W.2d 172, 174 (Tex.Cr.App.1969). Considering the record as a whole and viewing it in the light most favorable to the State, we find the evidence sufficient to support the judgment and overrule the first ground of error. *Indo v. State*, 502 S.W.2d 166, 169 (Tex.Cr. App.1973).

We find no merit to appellant's second ground of error wherein he contends that the evidence was insufficient to support an affirmative answer to the first issue of fact submitted under Art. 37.071(b)(1), Vernon's Ann.C.C.P. Our exhaustive analysis of the evidence introduced upon the trial set out earlier reveals evidence of probative nature more than adequate to support the jury's finding. Ground two is overruled.

We turn now to a consideration of his third ground error wherein he challenges the sufficiency of the evidence to support the jury's answer to the second issue under Art. 37.071(b)(2), Vernon's Ann.C.C.P.[2]

At the punishment stage of the trial, the State and appellant rested without presentation of any evidence; and, as noted earlier, the evidence at the guilt stage of the trial was entirely circumstantial in nature. There was no evidence, per se, of any extra-neous criminal acts; there was no psychiatric evidence offered; there was no evidence of any prior criminal convictions nor was any character evidence introduced.

In *Robinson v. State*, 548 S.W.2d 63, 64 (Tex.Cr.App.1977), this Court listed several matters which it deemed relevant to the sentence and which the jury should consider in determining whether a defendant would be a continuing threat to society.[3] We have held in several cases, e. g., *Burns v. State*, 556 S.W.2d 270, 280 (Tex.Cr.App.1977), that the jury may consider the evidence adduced at the guilt-innocence stage in answering the question as to probability of future crimes of violence.

But, in *Warren v. State*, 562 S.W.2d 474, 476–477 (Tex.Cr.App.1978), a reversal was ordered because the second issue was supported only by the evidence at the guilt-innocence phase of the trial and a pen packet showing a prior felony conviction. The majority in *Warren* concluded that "[w]hile there may be cases where the evidence offered at the guilt stage of the trial may be sufficient to support an affirmative answer to special issue No. 2", the case then under review was not such a case. The Court noted that there was no psychiatric evidence, no evidence of prior crimes of violence, *and* no apparent intention to commit an act of violence when the criminal incident was begun.

Our case is distinguishable on the last point; here we have a crime of violence adequately supported by the circumstantial evidence. Shortly after the commission of the offense, we note that appellant was visiting with Armando Ramirez and Jerry Robinson at their beer-drinking rendezvous a very short distance from where Johnny's

2. Art. 37.071(b)(2) (Supp.1980): ". . . whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society . . . .."

3. "This Court has stated that in determining the likelihood of whether or not a defendant would be a continuing threat to society, the jury could consider whether the defendant had a significant criminal record. It could consider the range and the severity of his prior criminal conduct. It could further look to the age of the defendant and whether or not at the time of the commission of the offense he was acting under duress or under the domination of another. It could also consider whether the defendant was under an extreme form of mental or emotional pressure, something less, perhaps, than insanity but more than the emotions of the average man, however inflamed, could withstand." (citations omitted)

body was secreted. See and compare *Earvin v. State*, 582 S.W.2d 794, 799 (Tex.Cr. App.1979).

In *Vanderbilt v. State*, 563 S.W.2d 590, 599, fn. 4 (Tex.Cr.App.1978), the Court gratuitously called attention of the trial court to the holding in *Warren*, supra. Other cases by this Court have cited *Warren* but only when preceded by the flag, "cf". See, e. g., *Duffy v. State*, 567 S.W.2d 197, 208 (Tex.Cr.App.1978); *Bodde v. State*, 568 S.W.2d 344, 351 (Tex.Cr.App.1978); *Villarreal v. State*, 576 S.W.2d 51, 65 (Tex.Cr. App.1978); and *McMahon v. State*, 582 S.W.2d 786, 792 (Tex.Cr.App.1978).

■ After careful consideration of the entire record and the several factors which the jury could consider [as set out in *Hovila v. State*, 562 S.W.2d 243, 249 (Tex.Cr.App. 1978)], we are led to the inescapable conclusion that the evidence was insufficient to support an affirmative answer to the second issue. Consequently, we sustain appellant's third ground of error. *Warren v. State*, supra. This holding, however, affects only the death penalty. We must, therefore, consider the other complaints brought forward.

■ In his fourth and fifth grounds of error, appellant contends that the trial court erred in overruling his motion to quash the indictment because it did not state the name of the alleged kidnap victim. He argues that the indictment did not apprise him of the charges which he had to defend against. He also contends that such omissions made it impossible to use such indictment as a bar to future prosecution of the kidnapping case. On the authority of *King v. State*, 594 S.W.2d 425 (Tex.Cr.App. 1980), we must agree.

The indictment in *King*, supra, alleged that the accused did "while in the course of committing and attempting to commit kidnapping, aggravated rape and robbery," intentionally caused . . . the death of the named deceased. There as here the

appellant contended in a motion to quash the indictment that by failing to allege the name of the complainant or victim of "in-the-course-of offense" the indictment did not give the accused adequate notice of the charge against him. Here appellant also contends the failure rendered the indictment defective as a bar to subsequent prosecution for the same offense. We found in *King*:

"It is clear that when criminal conduct, constituting an aggravated feature of an offense may be directed at a person other than the ultimate victim of the crime alleged, the specification of that person is a fact to which the accused is entitled should he request it by timely filed written motion to quash."

And in *King* we held:

"We hold that appellant's motion to quash in the instant case entitled him to the allegation of facts sufficient to bar a subsequent prosecution for the same offense and sufficient to give him precise notice of the offense with which he was charged."

The finding and holding of *King* make clear that a motion to quash on the grounds stated is *not* directed to omitted *elements* of the "in-the-course-of offense" mentioned in the indictment[4] but, rather, to "a fact which is crucial to the accused's preparation of his defense to the main charge of capital murder." The same distinction was made in, e. g., *Lindsay v. State*, 588 S.W.2d 570, 572 n. 2 (Tex.Cr.App.1979).

■ So here the indictment is susceptible of an interpretation that the victim of the alleged kidnapping was a person other than the named deceased. We facially test an indictment "by itself, as a pleading," just as was most recently done in *Lindsay v. State*, 588 S.W.2d 570, 572 (Tex.Cr.App. 1979) and *Doty v. State*, 585 S.W.2d 726 (Tex.Cr.App.1979), for "[i]t can neither be supported nor defeated as such by what evidence is introduced on the trial," *Ritter*

---

4. Thus, inapposite are cases such as *Livingston v. State*, 542 S.W.2d 655, 658 (Tex.Cr.App. 1976), holding that "an indictment charging one offense during the commission of another

crime need not allege the elements of the latter offense." Accord: *Hammett v. State*, 578 S.W.2d 699 (Tex.Cr.App.1979) and cases cited at 708.

*v. State*, 76 Tex.Cr.R. 594, 176 S.W. 727, 730 (Tex.Cr.App.1915), and this Court will not indulge in any presumption to complete the pleading, *Sanchez v. State*, 155 Tex.Cr.R. 364, 235 S.W.2d 149, 153 (Tex.Cr.App.1951). The common thread that runs through recent considerations of adequate notice to an accused when raised by motion is that where the underlying statute denouncing the offense prescribes, or permits conviction on, more than one set of circumstances, "the accused is not required to anticipate any and all variant facts the state might hypothetically seek to establish," *Drumm v. State*, 560 S.W.2d 944, 947 (Tex.Cr.App. 1977), but by his motion or exception may insist on "a specific allegation of what the State will rely upon to convict," *Amaya v. State*, 551 S.W.2d 385, 387 (Tex.Cr.App. 1977). Also *Cruise v. State*, 587 S.W.2d 403, 404 (Tex.Cr.App.1979) and *Garza v. State*, (Tex.Cr.App.1980).[5] That thread was broken in the case before us.

◼ Accordingly, we are constrained to sustain grounds of error four and five. Yet that ruling raises a question of proper disposition of the cause in its present posture. Since the affirmative answer to the second issue on capital punishment has been set aside for insufficient evidence to support it, the death penalty feature is no longer in the case. On the other hand, under the present indictment the offense is still capital murder, albeit the indictment has been held defective against a motion to quash. Because the defect is readily curable and since nature of the offense is grisly to the extreme, we are permitted the assumption that the case will be retried on an amended indictment. To obviate recurring complaints and channel the flow of a new trial, the remaining grounds of error will be considered.

◼ We turn now to appellant's sixth ground of error wherein he contends that the trial court erred in permitting Lawyer Goss to testify that he saw appellant in Lubbock during the afternoon of October 26. At the preliminary hearing outside the presence of the jury, it was shown that Goss was appellant's counsel in an unrelated criminal matter and that appellant came to Goss' office and made a payment on the fee in such criminal case. Appellant now argues that when Goss testified to seeing appellant in Lubbock—standing alone—amounted to a violation of the attorney-client privilege.

Art. 38.10, Vernon's Ann.C.C.P., insofar as material to this case, is set out in the margin.[6]

Appellant relies upon language found in *Cathey v. State*, 467 S.W.2d 472, 473 (Tex. Cr.App.1971), and authorities therein cited. We are of the opinion that such reliance is misplaced. No testimony was introduced before the jury as to any communication between attorney and client, nor was the jury advised that appellant had ever been a client of Goss. Insofar as the jury learned from the testimony given, Goss may have become acquainted with appellant as fellow members of a church, bowling team, or social club.

Nor are we persuaded by appellant's reliance upon *Holden v. State*, 44 Tex.Cr.R. 382, 71 S.W. 600, 601 (1903). Goss gave no incriminating evidence against his client; he simply testified to a single circumstance —appellant's presence in a large city upon a particular day and hour.

In *Church v. State*, 552 S.W.2d 138, 142 (Tex.Cr.App.1977), appellant's counsel, who was present at the lineup, testified on the trial. This Court found no error, saying:

---

5. Since, as pointed out in *Garza*, supra, a simple and easy manner is statutorily provided for curing a defect of form before announcement of ready, the reluctance of a trial judge to require or the resistance of a prosecuting attorney to make the amendment that is responsive to a motion or exception as to form is most difficult to understand. Alternatively, a statement in the record apprising the accused of the name of

the victim of the "in-the-course-of offense" should suffice to show notice was given.

6. ". . . an attorney at law shall not disclose a communication made to him by his client during the existence of that relationship, nor disclose any other fact which came to the knowledge of such attorney by reason of such relationship."

"No communication between counsel and appellant was disclosed. Hence the attorney-client privilege was not invaded. Article 38.10, V.A.C.C.P."

▮ Moreover, the fact that appellant was in Lubbock on the afternoon of October 26 was made known to the jury by many other witnesses. He was identified without objection by Teddy Robinson, Cecille Hunter, W. E. Davis, and Ray Dunn. At most, the testimony of Goss was merely cumulative. It has long been the rule that improper admission of evidence does not constitute reversible error if the same facts were proved by evidence not objected to. *Lichtenwalter v. State*, 554 S.W.2d 693, 694 (Tex.Cr.App.1977), and cases therein cited. We find no error and ground six is overruled.

In his seventh ground of error, appellant contends that the trial court erred in overruling his motion to allow him additional funds with which to secure the services of an investigator.

Early in the proceedings, appellant had sought funds with which to employ an investigator to assist his court-appointed counsel and the trial court had ordered a payment of the maximum sum provided by Vernon's Ann.C.C.P. art. 26.05, § 1(d) (Supp. 1980), the sum of $500. During the course of the trial, appellant filed the motion requesting additional funds for use in employing an investigator. The motion was denied.

▮ Appellant does not point to any supporting evidence which would authorize or require the court to furnish additional funds for such purpose, the only record reference in the brief being to the motion itself, the operative language of which is set out in the margin.[7]

Appellant now argues, without additional factual basis in the record, that the refusal to provide the additional funds:

". . . deprived Appellant of effective representation of counsel, due process of law, equal protection, and the right to a fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and Article 1, Section 10, 13, and 19 of the Constitution of the State of Texas."[8]

We find no merit to the contention now advanced. All of the arguments now thrust upon us were considered and overruled in the dispositive case of *Cherry v. State*, 488 S.W.2d 744, 753 (Tex.Cr.App.1972), which was followed by *Freeman v. State*, 556 S.W.2d 287, 303 (Tex.Cr.App.1977).

▮ In his eighth ground of error appellant contends that the trial court erred in refusing to order State's counsel to divulge the identity of the informant whom he alleges gave information leading to the discovery of the body of the deceased in the secluded canyon area. The brief is deficient in that it does not point to the record where factual support of the contention may be found. Vernon's Ann.C.C.P. art. 40.09, subdiv. 9 (1980).

After a careful search of our voluminous record, we now understand the reason for such omission. There is no factual basis in the record. Appellant filed a motion seeking the order; but, at the hearing, counsel

7. "Defendant would further show the Court that he has utilized the services of the appointed investigator to the full extent of the available statutory monies, and that he has a continuing need for the services of this investigator and must, in fact, have continued investigative services in order to prepare his defense to the charges now pending against him.
"Defendant would show that his attorneys have spent vast amounts of time personally investigating the case, but now have insufficient time to continue in the legal preparation as well as in the investigation of the case. For this reason, Defendant files this

Motion requesting additional funds in the minimum amount of $1,000.00 for use in employing investigative services in the preparation of this case."

8. Appellant also argues that the $500 limit found in Art. 26.05, § 1(d), is invalid since the ceiling is the result of arbitrary and capricious action on the part of the Legislature. We do not find it necessary or proper to address such contention since there was and is no factual basis for a showing of need for additional funds exceeding the statutory limit.

offered no evidence. Instead, counsel made a statement:

"[W]e have been advised that there has been at some point in time, and this was stated at three different positions in the various reports, copies of which we have been furnished, that there was an informant. From the information that was obtained from this informant it appears to be possible that this person was either a party to this offense or was present at the time of the offense and has information that can be very fundamental in the preparation of the defense of this case and would urge the court to grant our motion so that we might know that information with which to move forward and prepare."

No reports were identified or tendered in evidence. After a colloquy between counsel and the court, the Court stated into the record:

"Unless there is shown—something is shown to the Court establishing that this party is a material witness or a witness in some matter to the commission of the offense, the Court will overrule your motion.

\*    \*    \*    \*    \*    \*

"Other than general statement of counsel until there is something shown to the Court indicating this, the Court will overrule your motion."

We find no merit to the contention now advanced and it is overruled. *Lopez v. State*, 574 S.W.2d 563, 565 (Tex.Cr.App. 1978); *Bernard v. State*, 566 S.W.2d 575, 577 (Tex.Cr.App.1978); *Andrew v. State*, 558 S.W.2d 876, 877 (Tex.Cr.App.1977); *Hardeman v. State*, 552 S.W.2d 433, 439 (Tex.Cr.App.1977).

In the ninth and tenth grounds of error, appellant complains of the admission of photographs of the body of Johnny Turner, Jr., showing the body as found in the canyon. One of the pictures showed that the boy's pants and underclothing had been pulled down below his knees but that he still had his socks and shoes on his feet.

Appellant says that the admission of such photographs "constituted an improper comment" on his failure to testify. He argues that the very nature of the photograph would "raise questions in the minds of the jurors concerning any possible sexual conduct," etc. and he would then be "put in an indefensible position regarding the photograph and its obvious reference to an extraneous sexual offense."

At the outset of our discussion of these grounds, it is well to point to the testimony of Officer Nelson who described the finding of the body, the way it was clothed, who also testified that the pictures correctly portrayed the body at the scene in the same condition as when found. Thus, the photographs were competent. In *Harrington v. State*, 547 S.W.2d 621, 625–626 (Tex.Cr.App.1977), Judge Dally stated both the rule and the exception with regard to such photographs, using this language:

"If a photograph is competent, material and relevant to the issues on trial, the photograph will not be inadmissible because it is gruesome, unless it is offered *solely* to inflame the minds of the jury. If a verbal description of the body and the scene would be admissible, a photograph depicting the same is admissible. Only when the probative value of the photograph is very slight and the inflammatory aspects great will it be an abuse of discretion to admit the photographs." (citations omitted, emphasis supplied)

The admissibility of photographs must rest largely in the discretion of the trial judge. *Phillips v. State*, 511 S.W.2d 22, 28 (Tex.Cr.App.1974); *Harrington v. State*, supra. We find no abuse of discretion on the part of the trial judge in admitting the photograph.

Moreover, the photograph showed only that which had been told to the jury by Officer Nelson; and, after an examination of the original of the photograph found in our record, we hold that the inflammatory aspects (if any) of the photograph are not such as to outweigh the probative value to the jury. See *Kalinec v. State*, 500 S.W.2d 146, 147 (Tex.Cr.App.1973). Appellant's reliance upon *Terry v. State*, 491 S.W.2d 161

(Tex.Cr.App.1973), is misplaced. The photograph in this case did not show the results of an autopsy, as in *Terry*; instead, the photograph which we have reviewed simply showed the body as found.

Appellant also contends that the photographs showed the commission of an extraneous crime, i. e., some type of sexual molestation of the young boy, citing *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Cr. App.1972), and its progeny. We disagree. As explained in *King v. State*, 553 S.W.2d 105, 106 (Tex.Cr.App.1977). the photographs showed " 'the context in which the criminal act occurred—what has been termed the "res gestae".' *Albrecht v. State* . . ."

Moreover, as we have mentioned earlier, the photographs simply showed in visually clearer form the facts stated verbally by Officer Nelson. He described in minute detail the condition of the body and how it was dressed when found. Thus, we invoke the general rule that where testimony admitted over objection is the same or substantially similar to that already received, no error is shown. See *Kirvin v. State*, 575 S.W.2d 301, 302 (Tex.Cr.App.1978), and cases therein cited.

Finding no merit thereto, grounds of error nine and ten are overruled.

Appellant's diligent appointed counsel has filed an untimely supplemental brief wherein he urges error in the jury selection process. We will consider such grounds of error in the interest of justice under the provisions of Vernon's Ann.C.C.P. art. 40.09(13) (1979).

The two grounds are bottomed upon what appellant contends to be improper challenges of jurors in violation of the doctrine laid down in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). In view of our action setting aside the jury's answer to the second issue under Art. 37.071(b)(2), such points have no merit. *Hancock v. State*, 462 S.W.2d 36, 39 (Tex. Cr.App.1970). See also, *Creel v. State*, 493 S.W.2d 814, 821 (Tex.Cr.App.1973).

Because of the insufficiency of the evidence, we have set aside the jury's answer to the second issue; consequently, we must now enter a judgment setting aside the penalty assessed by the jury as embodied in the judgment. Appellant may not again be tried for this capital murder wherein the State seeks the death penalty. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

On the other hand, our sustaining grounds of error four and five requires reversal of the judgment of conviction and remand for a new trial. It is so ordered.

DALLY and W. C. DAVIS, J., concur.

ROBERTS, J., not participating.

DOUGLAS, Judge, dissenting.

The indictment should be held sufficient for the reasons stated in the dissenting opinion in *King v. State*, 594 S.W.2d 425 (Tex.Cr.App.1980).

## OPINION ON STATE'S MOTION FOR REHEARING

ODOM, Judge.

Motion for leave to file State's motion for rehearing was granted so that we could reconsider one particular issue.

On original submission we held that the indictment in this case was subject to the motion to quash filed by appellant. The indictment failed to allege sufficient facts (particularly, the name of the kidnap victim) to give appellant notice of the charges against him and permit preparation of his defense. *Drumm v. State*, Tex.Cr.App., 560 S.W.2d 944. To this holding we adhere.

In footnote 5 of our opinion on original submission, referring to the defect raised by the motion to quash, we stated that the defect could have been cured by amendment of the indictment (Art. 28.10, V.A.C.C.P.), and also stated, "Alternatively, a statement in the record apprising the accused of the name of the victim of the 'in-the-course-of-offense' should suffice to

show notice was given." On rehearing the State submits that in this case such informal notice was given. On reconsideration we conclude that the indictment could not have been amended under Art. 28.10, supra, to cure the defect in notice, that a statement of informal notice is not sufficient, and that the indictment should have been quashed and must be dismissed.

Art. 21.01, V.A.C.C.P., provides that an indictment is the written statement of a grand jury accusing a person of an act or omission constituting an offense. Among the constitutional protections provided in Article I, Sec. 10 of the Texas Constitution, is that "no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury," (except in certain cases not applicable here). The interpretive commentary to this provision in 1 Vernon's Ann.Tex.Const., p. 271, observes:

"This provision is substantially an affirmance of the rule of the common law. The requisite of indictment by a grand jury was designed to protect an individual against unjust prosecution without sufficient cause, said indictment informing the accused of the nature of the charges against him so that he may adequately prepare his defense."

The statutory allowance to amend an indictment as to matters of form is limited by the constitutional requirement of a grand jury finding, expressed in the indictment, before felony prosecution. The connection between the constitutional protection of the grand jury and the statutory provision for amendment of matters of form was implicitly recognized early in the criminal jurisprudence of this State. In *Calvin v. State*, 25 Tex. 789, 794 (1860), the Court wrote:

"The indictment is the sworn declaration of the grand jury, and what they in substance 'do say', must stand as they have said it. The law prescribes the extent to which their findings may be amended. The amendments which are allowed relate to matters of form only, and to the name of the party who is accused. There can be no amendment as

to any declaration of a fact by the grand jury."

Next, in *Sanders v. State*, 26 Tex. 119, it was held:

"An indictment may be amended when it is defective on account of form; but where an indictment is defective in substance the defect cannot be cured by amendment; and the reason is, that the substance of the indictment is the finding of the grand jury, and must be taken as it comes from them; whereas the formal part of the bill is supposed to be wholly the work of the officer of the law, and may be amended by him under the direction of the court."

The Court of Appeals spoke on this subject in *Sharp v. State*, 6 Tex.App. 650, 653 (1879):

"The work of the grand jury is substance, and cannot be amended, for the obvious reason that neither the pleader nor the court can perform the duties which devolve upon and are confided to the grand jury, and to it alone; whilst that portion of an indictment which devolves upon the pleader may, for reasons equally obvious, be amended, if permission be granted for that purpose at the proper time and in a proper manner." [1]

"What is form and what is substance is defined by the Code; . . ."

With this reference to the Code we set out the relevant provisions before continuing to other cases on the subject:

Art. 27.08, V.A.C.C.P.:

"There is no exception to the substance of an indictment or information except:

"1. That it does not appear therefrom that an offense against the law was committed by the defendant;

"2. That it appears from the face thereof that a prosecution for the offense is barred by a lapse of time, or that the offense was committed after the finding of the indictment;

"3. That it contains matter which is a legal defense or bar to the prosecution; and

---

1. The "proper time, proper manner" practice of the day is related earlier in the *Sharp* opinion.

"4. That it shows upon its face that the court trying the case has no jurisdiction thereof."

Art. 27.09, V.A.C.C.P.:

"Exceptions to the form of an indictment or information may be taken for the following causes only:

"1. That it does not appear to have been presented in the proper court as required by law;

"2. The want of any requisite prescribed by Articles 21.02 and 21.21.

"3. That it was not returned by a lawfully chosen or empaneled grand jury."

Art. 21.02, V.A.C.C.P.:

"An indictment shall be deemed sufficient if it has the following requisites:

"1. It shall commence, 'In the name and by authority of The State of Texas.'

"2. It must appear that the same was presented in the district court of the county where the grand jury is in session.

"3. It must appear to be the act of a grand jury of the proper county.

"4. It must contain the name of the accused, or state that his name is unknown and give a reasonably accurate description of him.

"5. It must show that the place where the offense was committed is within the jurisdiction of the court in which the indictment is presented.

"6. The time mentioned must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation.

"7. The offense must be set forth in plain and intelligible words.

"8. The indictment must conclude, 'Against the peace and dignity of the State.'

"9. It shall be signed officially by the foreman of the grand jury."

Art. 28.09, V.A.C.C.P.:

"If the exception to an indictment or information is only on account of form, it shall be amended, if defective, and the cause proceed upon such amended charge."

Art. 28.10, V.A.C.C.P.:

"Any matter of form in an indictment or information may be amended at any time before an announcement of ready for trial upon the merits by both parties, but not afterward. No matter of substance can be amended."

A strict reading of these provisions would suggest that any defect under Art. 21.02, supra, could be corrected by amendment pursuant to Arts. 28.09 and 28.10, supra. Such a reading, however, would allow amendment of the very facts found by the grand jury as to the commission of the alleged offense, in abrogation of the constitutional protection of the right to indictment by grand jury before prosecution for a felony, and in conflict with the principles of the above quoted cases. The jurisprudence on this subject reflects construction and applications of the provisions of what is now Art. 21.02, supra, that avoid such a constitutional conflict. That jurisprudence as of 1908 was outlined in *Wade v. State*, 52 Tex.Cr.R. 619, 108 S.W. 677:

"No indictment can be amended as to matter of substance after presentment by the grand jury. Said pleading could only be amended as to matter of form before announcement of ready for trial. Article 587 of the Code of Criminal Procedure of 1895 is as follows: 'Any matter of form in an indictment or information may be amended at any time before an announcement of ready for trial upon the merits, by both parties, but not afterward. No matter of substance can be amended.' It has been held formal matters in an indictment, subject to amendment, are those mentioned in the second and third subdivisions of article 439, Code Civ. [sic] Proc. 1895, and as to such amendments they must be made before announcement of ready for trial. The second and third subdivisions of said article 439 are as follows: (2) 'It must appear therefrom that the same was presented in the district court of the county where the grand jury is in session.' (3) 'It must appear to be the act of a grand jury of the proper

county.' It has been also held that the constitutional and statutory provisions with regard to commencement and conclusion of indictments are matters of substance as well as of form, and that an indictment or information cannot be amended so as to cure defects in the commencement or conclusion. See *State v. Durst*, 7 Tex. 74; *State v. Sims*, 43 Tex. 521; *Holden v. State*, 1 Tex.App. 225; *Cox v. State*, 8 Tex.App. 254, 34 Am.Rep. 746; and *Saine v. State*, 14 Tex. App. 144. It has been further held that the venue of an offense is a matter of substance and not amendable. See *Collins v. State*, 6 Tex.App. 647; *Robins v. State*, 9 Tex.App. 666; *Orr v. State*, 25 Tex.App. 453, 8 S.W. 644; *Smith v. State*, 25 Tex.App. 454, 8 S.W. 645; *Lawson v. State*, 13 Tex.App. 83. The time and commission of an offense is a matter of substance and cannot be amended. *Sanders v. State*, 26 Tex. 119; *Drummond v. State*, 4 Tex.App. [150]; *Huff v. State*, 23 Tex.App. 291, 4 S.W. 890; See, also, *Calvin v. State*, 25 Tex. 289. When the defect in an indictment is of substance, the indictment is not amendable, and the prosecution will be dismissed. *Edwards v. State*, 10 Tex.App. 25.

"It has also been held that descriptive averments, whether unnecessarily particular or minute, cannot be disregarded in proving up a case. For instance, it is not necessary to allege the color of an animal, or some particularity about the animal which peculiarly identifies it; yet, if the allegation is made, it must be proved, or the prosecution fails in its testimony. This question of requiring the state to prove the particular unnecessary description is so familiarly known to the profession and to the jurisprudence that we deem it unnecessary to cite authorities. It was unnecessary in this case to have set out the particular dates of the issue of the paper in which the publication of the order of the commissioners' court was published; but, the grand jury having

done so, it was beyond the power and province of the court to amend the indictment by eliminating it. It specified the particular election, the result of which was being published; and, the prosecution having thus elected to prosecute under that particular election it will be confined in its elements to such election. See *Massie v. State* (decided in the present term) 52 Tex.Cr.R. 548, 107 S.W. 846, and *Weathered v. State*, 60 S.W. 876, 1 Tex.Ct.Rep. 655. Had the indictment alleged generally that the publication had been had for four successive weeks, without specifying the dates of the publication and the year of the election, proof of either valid election, under the *Massie* Case, would have been sufficient. But in this case, the state having specified this particular election and the publication in the newspaper under it, the state would be confined to said election; and, having alleged it in the indictment, it became a matter of substance, descriptive in its nature, and could not be altered or changed by the court. Otherwise we would have what purports to be an indictment different entirely from that actually preferred by the grand jury, and which would constitute it no indictment at all. As the indictment comes from the grand jury, in matters of substance it must constitute the pleading required by the Constitution and laws of the state, and cannot be changed, altered, or amended."

Subsequent cases have continued to draw the distinction between amendable form and non-amendable substance along the same line, by refusing to allow amendment of the allegations returned by the grand jury as to the commission of the offense,[2] while allowing amendment of the formal parts of the bill prepared by the "officer of the law." *Sanders v. State*, supra. Cases on the non-amendable/substance side of the distinction include: *Rutherford v. State*, 74 Tex.Cr.R. 617, 169 S.W. 1157 (changing "physical" to "physician"); *Kirkendall v.*

---

2. The unique exception to this seems to be the allowance of striking surplusage, which is construed as tantamount to abandonment of what

need not be proven in any event. *Garcia v. State*, Tex.Cr.App., 537 S.W.2d 930; *Davis v. State*, Tex.Cr.App., 532 S.W.2d 626.

*State*, 78 Tex.Cr.R. 168, 180 S.W. 676 (date of offense); *Kelly v. State*, 81 Tex.Cr.R. 408, 195 S.W. 853 (date of offense and name of complaining witness); *Patterson v. State*, 84 Tex.Cr.R. 157, 205 S.W. 986 (county of offense); *Johnson v. State*, 84 Tex. Cr.R. 243, 206 S.W. 527 (date of false statement in perjury case); *Morman v. State*, 127 Tex.Cr.R. 264, 75 S.W.2d 886 (court of prior conviction alleged for enhancement); *Jeters v. State*, 128 Tex.Cr.R. 379, 82 S.W.2d 150 (date of offense); *McDonald v. State*, 138 Tex.Cr.R. 610, 137 S.W.2d 1046 (striking "gross" from "gross negligence"); *Balbuena v. State*, 159 Tex.Cr.R. 227, 262 S.W.2d 727 (changing "whiskey" to "beer"); *Clopton v. State*, Tex.Cr.App., 408 S.W.2d 112 (date of prior conviction alleged for enhancement); *Jackson v. State*, Tex.Cr. App., 419 S.W.2d 370 (changing spelling of deceased's name); *Burrell v. State*, Tex.Cr. App., 526 S.W.2d 799 (striking descriptive averments). Cases on the amendable/form side of the distinction include: *Burk v. State*, 57 Tex.Cr.R. 635, 124 S.W. 658 (date of filing); *Hightower v. State*, 73 Tex.Cr.R. 258, 165 S.W. 184 (adding term of court); *Weaver v. State*, 96 Tex.Cr.R. 363, 257 S.W. 246 (adding term of grand jury); *Paulk v. State*, 97 Tex.Cr.R. 415, 261 S.W. 779 (date of term of grand jury); *Huff v. State*, 123 Tex.Cr.R. 238, 58 S.W.2d 113 (adding to designation of court at presentation); *Stansbury v. State*, 128 Tex.Cr.R. 570, 82 S.W.2d 962 (county of grand jury).

The constitutional principle at issue has also been restated in recent years. In *Bowie v. State*, 401 S.W.2d 829, the Court approvingly quoted from Erisman's Manual of Reversible Errors:

> "Since the indictment is the result of grand jury action, the allegations of such indictment which charge the defendant with a crime, are matters of substance and cannot be amended . . . ."

The specific constitutional basis was explicitly referred to in *Benoit v. State*, Tex.Cr. App., 561 S.W.2d 810, and *Moore v. State*, Tex.Cr.App., 532 S.W.2d 333:

> "It must be remembered that it is the intent of Article I, Sec. 10 of the Texas Constitution that an accused in a particular case must be furnished information upon which he may prepare his defense, and this information *must come from the face of the indictment.* . . .
>
> "It is, of course, not sufficient to say that the accused knew with what offense he was charged, but the inquiry must be *whether the charge in writing* furnished that information in plain and intelligible language. . . ." (Emphasis added.)

The right to indictment by a grand jury before answering a felony charge and the right to notice ride in tandem. No one is answerable to a felony charge except on action by a grand jury making such an accusation[3]—and it is from that accusation that notice must be had. The offense so charged may not be amended, neither by reducing the facts alleged, nor by changing them, nor by adding to them. To allow amendment by supplemental notice from the State violates the rule that notice must come from the facts found and alleged by the grand jury in the indictment. The proper relief upon motion to quash an indictment that gives insufficient notice is to dismiss the indictment, not to amend it. That was the disposition in *Moore v. State*, Tex.Cr.App., 473 S.W.2d 523, and the disposition of this case is changed to that extent.

The State's motion for rehearing is overruled.

DOUGLAS, Judge, dissenting.

The Court reverses this conviction upon the authority of *King v. State*, 594 S.W.2d 425 (Tex.Cr.App.1980). The *King* case should be overruled, but in any event, it is readily distinguishable from the instant case.

In *King*, the indictment alleged murder in the course of kidnapping, robbery, and

---

**3.** This right may, however, be waived in non-capital cases by following the requirements of Art. 1.141, V.A.C.C.P.

aggravated rape. The proof showed the named complainant to have been a victim of the murder, kidnapping and robbery, but a second person, not named in the indictment, to have been the sole victim of the rape.

The State contended in *King* that, because the named complainant was shown to have been the victim of the kidnapping and robbery, the indictment put King upon sufficient notice of the facts to be proved. The Court, in rejecting this argument, said:

"While this argument might be well taken had the State alleged *only* kidnapping and robbery as the aggravating offenses committed or attempted during which the murder occurred, such was not the case; Article 21.03, V.A.C.C.P., directs:

"Everything should be stated in an indictment which is necessary to be proved.

"By virtue of the State's *additional* allegation of aggravated rape, it was necessary that evidence of an attempted commission or commission of that conduct be presented by the State in order to meet its burden of proof. Indeed, such evidence was in fact adduced at trial through the testimony of the aggravated rape victim. As such, the name of the aggravated rape victim was clearly a fact which was critical to appellant's defense preparation, and he was entitled to the benefit of that fact upon his timely request therefor. See *Cruise*, supra. [*Cruise v. State*, 587 S.W.2d 403 (Tex.Cr. App.)] Furthermore, the allegation of such fact was required to precisely distinguish the conduct alleged from other conduct by the accused, and thereby insure a bar to a subsequent prosecution for the same offense. Article 21.04, V.A.C.C.P."

The instant case presents just that case where the State's argument is well taken. The sole victim of the acts alleged in the indictment was the named complainant. Every fact of which appellant required notice was available in the indictment. No surprise could have befallen the appellant when the State proved that the kidnapping victim was the same boy who was murdered.

The State's motion for rehearing should be granted.

CLINTON, Judge, dissenting.

I have no disagreement with the majority opinion's threshold conclusion, nor with the numerous authorities cited to support it, that matters of form contained in an indictment may be amended prior to announcement of ready by the parties, while matters of substance may not be so amended.[1]

However, that the "amendment" to be made here is a matter of substance, is another question, and one to which the majority opinion offers no satisfactory answer. I find no support whatever in the majority opinion for the proposition that factual elaboration—*unnecessary to the fundamental sufficiency of the indictment*—which the grand jury failed to make, or simply ignored, constitutes *in absentia* a matter of substance. I am further perplexed by the circumlocutory rationale advanced by the majority which ignores and then creates conflict with the Code of Criminal Procedure, as well as case authority thought to be once and for all decisive on the nature of "form" versus "substance," such as *American Plant Food Corp. v. State*, 508 S.W.2d 598 (Tex.Cr.App.1974).[2]

1. Indeed, the majority's lengthy discussion in this regard would be obviated, in my view, by a recitation of the language of Article 28.10, V.A. C.C.P., which unambiguously provides:

Any matter of form in an indictment . . may be amended at any time before an announcement of ready for trial upon the merits by both parties, but not afterward. No matter of substance can be amended.

2. One holding of *American Plant Food* concisely illustrates the point:

The . . . two requirements . . . , that the State's pleading must allege *facts* sufficient to bar a subsequent prosecution for the same offense and *sufficient to give the defendant notice of precisely what [the accused] is charged with, though relating to the substance, of the [allegation] in [a] sense, are,* in contemplation of exceptions under Articles 27.08 and 27.09, [V.A.C.C.P.], *grounds for an exception to the form* under Articles 27.09(2) and 21.21(7), *and not for an exception to the substance* under Article 27.08(1).

While I agree both that there is a *"connection* between the constitutional protection of the grand jury and the statutory provision *for amendment of matters of form,"* and that "[t]he statutory allowance to amend an indictment . . . is *limited by* the constitutional requirement of a grand jury finding," I am not persuaded that "a strict reading" of the Code of Criminal Procedure[3] "would allow . . . abrogation of the constitutional protection of the right to indictment by grand jury."[4]

Let us review the "connection" between the statutes and the Constitution, and, by use of the majority opinion's cited authority, determine the extent to which the statutes are "limited by the constitutional requirement" of the right to indictment by grand jury. It is initially appropriate to determine exactly what the Constitution *does require.*

Article I, Section 10 of our Constitution provides in relevant part, simply that:

In all criminal prosecutions the accused . . . shall have the right to demand the *nature* and *cause* of the accusation against him, . . . [A]nd no person shall be held to answer for a criminal offense, unless on an *indictment* of a grand jury . . . . .

Article 21.01, V.A.C.C.P., informs us of the "substance" of an indictment:

An 'indictment' is the written statement of a grand jury accusing a person therein named of *some act*[5] or *omission*[6] which *by law is* declared to be *an offense.*[7]

And what are the essential components of "an offense" as declared by law? V.T.C.A. Penal Code, Section 1.07(a)(13), directs that "element of offense" means:

(A) the forbidden conduct;[8]

(B) the required culpability;[9]

(C) any required result; and

(D) the negation of any exception to the offense.

It seems clear to me, then, that what the Constitution requires, is that the grand jury find and express facts which are sufficient to show on the face of the indictment that the accused is alleged to have done that which a penal statute proscribes; or restated, the grand jury's constitutional function is to assure, by affirmative finding, that there is sufficient cause to believe that a person has *committed* each and every "element" of *an offense,* and express those findings in writing in order to notify him

---

Clearly any such defect would not render the [indictment] void or insufficient to support a conviction.
508 S.W.2d 603.
And a further notation by the Court in *American Plant Food:*
It will also be observed that any defect in the matters set forth in the other provisions of Article 27.08 also go to *the very sufficiency of the indictment or* information *to support the* particular *conviction* based thereon. *It is this quality of the sufficiency of the State's pleading as a matter of law to support the conviction that makes the deficiency one of substance.*
*Id.,* n. 1. (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

3. Specifically, Articles 21.02, 28.09 and 28.10, V.A.C.C.P., according to the majority. But see also Articles 27.08 and 27.09, V.A.C.C.P.

4. Nor can I agree that a "strict reading" of the articles cited in n. 3, *ante,* would allow a "conflict with the principles" of the cases quoted in the majority opinion, for the reasons to be discussed *post.*

5. V.T.C.A. Penal Code, § 1.07(a), provides that, in our penal code,
(1) 'Act' means a bodily movement, whether voluntary or involuntary, and includes speech.

6. "Omission" is defined as "failure to act." Section 1.07(a), supra, subsection (23).

7. V.T.C.A. Penal Code, Section 1.03(a), provides in relevant part:
Conduct does not constitute an offense unless it is defined as an offense by statute, · . . .

8. " 'Conduct' means an act or omission and its accompanying mental state." Section 1.07(a), supra, subsection (8). [See n. 5 and 6, *ante,* for definitions of "act" and "omission"].

9. See V.T.C.A. Penal Code, Section 6.02 entitled "Requirement of Culpability."

thereof, before he is held liable to defend against a prosecution by the State.[10]

Thus, the duty devolving upon and confided to the grand jury by direction of our Constitution is to accuse a person of an act or omission constituting *an offense*, and when the grand jury makes such a written declaration on the face of an indictment, the constitutional right of the accused has been fully honored. While it might be *preferable* that the grand jury find every factual detail necessary to prove the "skeletal" allegation that an offense has been committed, such preference is a creature of statute,[11] and not a constitutional requirement.

Consonant with the above, the Code of Criminal Procedure instructs that "There is *NO exception* to the *substance* of an indictment . . . *except:*

1. That *it does not appear* therefrom that an *offense* against the law *was committed* by the defendant; . ."
Article 27.08, V.A.C.C.P.[12]

Without question, a person who is tried upon an indictment which utterly fails to allege an offense against the law, has been denied his constitutional right to indictment by a grand jury; in recognition of this precept, Article 28.10 specifically and unambiguously prohibits any attempt to correct such fundamental deficiency by amendment. Thus, in such a case, because the constitutional protection has been initially denied, it must be effectuated by a reinvocation of the grand jury process.

The instant case presents an entirely different issue which, in turn, involves quite dissimilar policy considerations. The concern of an accused, faced with a fundamentally adequate indictment against him, is that he be given specific notice of facts which the *State* will prove in support of the grand jury findings alleging he has committed an offense.[13] See Articles 21.11 and 21.02(7), V.A.C.C.P. Thus, the accused's constitutional right to indictment having been honored, I can see no justification in law or reason for requiring that such *additional factual elaboration* be supplied by *additional* investigation, deliberation and written declaration of a grand jury.[14] The rule the majority fashions today takes the grand jury function far beyond its constitutionally intended contribution to the criminal judicial process.[15]

The majority opinion insists that its conclusion in this cause is compelled by the numerous case decisions quoted, cited and discussed therein. While I have no doubt that ancient authority can be found to support directly the majority construction, I

**10.** This interpretation is wholly consistent with the commentary to Tex.Const. Art. I, Section 10, quoted by the majority:

> The requisite of indictment by a grand jury was designed to protect an individual against unjust prosecution without *sufficient cause*, said indictment informing the accused of the *nature of the charges* against him so that he may adequately prepare his defense.

**11.** Article 21.03, V.A.C.C.P., provides that "Everything *should* be stated in an indictment which is necessary to be proved."

**12.** Likewise, the other three exceptions to the substance of an indictment included in and limited by Article 27.08, supra, are matters which defeat the pleading's sufficiency to *support a judgment of conviction.* [See n. 2, ante].

See also *Woodard v. State*, 86 Tex.Cr.R. 632, 218 S.W. 760 (Tex.Cr.App.1920); and compare *American Plant Food Corp.*, supra.

**13.** This Court has acknowledged that a second concern of the accused in such posture is that the allegations "enable [him] to plead the judg-

ment that may be given upon [the indictment] in bar of any prosecution for the same offense." Article 21.04, V.A.C.C.P.; *American Plant Food Corp.*, supra.

**14.** Indeed, if an accused fails properly to accept to a "skeletal," but fundamentally adequate indictment on the ground of insufficient notice, providing descriptive factual detail becomes the duty of the *prosecutor* in meeting his burden of proof before a petit jury, and ultimately, before this Court.

**15.** If the constitutional grand jury function in returning indictments is to find facts sufficient to give detailed notice of what will be proved at trial as the majority claims, rather than to make a "probable cause" finding of commission of an offense, expressed in writing for purposes of notice, how can we justify deprivation of this constitutional right to the accused who fails to except? Should he not waive exception in writing in such a case? See *Lackey v. State*, 574 S.W.2d 97 (Tex.Cr.App.1978).

am compelled to point out that none of the cases cited does. In *Calvin, a Slave v. State*, 25 Tex. 789 (1860), for example, the accused was tried on an indictment which alleged in one count that he murdered:

a negro woman, a slave, named Vina, the property of the heirs of the said Robert Smith, deceased.

Apparently dissatisfied with the accuracy of the property description of the victim in this count, all parties agreed to delete the phrase "the property of the heirs of the said Robert Smith, deceased," whereupon it was *erased* from the face of the indictment. The majority opinion correctly quotes the second part of the Supreme Court's holding, but fails to recite the first part, including the issue, which was:

. . . [W]e are of the opinion that the *alteration* of the indictment . . . was contrary to law, and that the indictment *as altered could not support a conviction*. The words which were *erased* from the indictment were words of substance. * * * *[T]hose words* having been placed in the first count *became words of substance by being put there.* * * * The question is whether or not the counsel, or the district attorney, and the prisoner, or even the court can make an *alteration* in an indictment in a *material respect.* We think not. [See majority opinion for remainder of holding].

25 Tex. at 794.

The Supreme Court concluded that because the indictment had been altered in a *fundamental* respect, the error was cognizable, having been raised for the first time on motion in arrest of judgment. Accord *American Plant Food Corp.*, supra.

In *Sanders v. State*, 26 Tex. 119 (1861), the grand jury failed to specify the year during which the accused allegedly stole a pistol; the prosecutor was permitted to insert "in the year of our Lord one thousand eight hundred and sixty-one." Pointing to the requirement that the time alleged must be a date anterior to presentment of the indictment, and not so remote as to be barred by the limitation, the Supreme Court stated at 120:

No part of an indictment can be more a matter of substance, as distinguished from a matter of form, than the part which states the time of the commission of the offense. [See majority opinion for remainder of holding.]

Of course the grand jury's finding and declaration of the date of the commission of an alleged offense is essential to the fundamental sufficiency of the pleading today, and the failure of the indictment to recite such fact makes it vulnerable to an exception as to substance, Article 27.08(2), V.A.C.C.P., and may not be rectified by amendment. Articles 28.09 and 28.10, supra.

Finally, the majority opinion quotes from *Sharp v. State*, 6 Tex.App. 650 (1879); in that case, the prosecutor was permitted to *change* the year contained in the caption to identify the time of the meeting of the court from "11876" to "1876." In this context, the Court of Appeals pointed out that such an alteration could not be made upon facts found by the grand jury; however, because the caption is the work of the prosecutor, any error therein is one of *form* and may be amended.

In addition to that quoted by the majority opinion, the Court of Appeals observed:

What is form and what is substance is defined by the Code; *and also what are the ONLY exceptions, either to the form or the substance*, of which one indicted can avail himself preliminary to the trial.

I certainly agree that because it is the constitutional function of the grand jury to find and express in writing facts which constitute "sufficient cause" to commence a felony prosecution, what the grand jury declares becomes a matter of substance which no one is at liberty to *change, strike* or *erase*. See *Calvin v. State*, supra. It is equally clear to me that no *addition* can be made to a fundamentally defective indictment, *in order to cure the fatal* deficiency. See *Sanders v. State*, supra.

But none of these situations is the case before us. And I find not a single case cited by the majority opinion which is applicable to the circumstances here; e. g.,

where grand jury findings are fundamentally sufficient, and factual elaboration of the material allegations is the subject of the amendment sought.

So long as factual details, descriptive of the offense alleged by the grand jury, are consistent with those allegations, I cannot agree that such elucidation constitutes a matter of substance which only a return trip to the grand jury can provide. Such a requirement is cumbersome and an obstacle to the fair and speedy administration of justice.

Rather, I am satisfied that the procedure contemplated by governing provisions of the Code of Criminal Procedure comports with every constitutional requirement and protection. Upon proper exception by the accused that the indictment fails to specify the name of the victim of the aggravating offense and he is thereby denied *notice of a fact* necessary to prepare his defense, if upon consideration the trial court finds that the name sought is one other than that reflected in the indictment, the exception must be sustained;[16] failure to sustain it in these circumstances constitutes prejudicial error. E. g., *King v. State*, 594 S.W.2d 425 (Tex.Cr.App.1980). On the other hand, if the trial court finds that the victim named in the indictment is the only victim involved in the capital murder prosecution, there is *no fact*, i. e., name, of which the accused is being deprived. But the examination and determination must be made for the record by the trial court; a statement by the State, if unchallenged, may suffice to support such a finding when both are spread on the record.

Particularly for the reason that I find no support for the majority's conclusion—and in fact am convinced that it is antithetical to the scheme contemplated by the Code of Criminal Procedure, which is wholly consistent with the intent of our Constitution [17]—I dissent to the additional confusion the majority interjects into the morass of the indictment law today.

---

16. Unlike the majority, however, I would give effect to Articles 21.02, 27.09, 28.09, 28.10, and 28.11, V.A.C.C.P., and direct that this additional fact be added to the indictment under the direction of the trial court, without requiring a reindictment by the grand jury.

17. Since the majority is obviously convinced that the Code of Criminal Procedure does not mean what it says because a strict reading of the unambiguous provisions in issue creates

conflict with the Constitution, I am at a loss as to why the majority does not simply declare those statutes unconstitutional.

Apparently, it is thought that such a drastic step would require justification by the application of standard principles of statutory construction, an analysis the majority takes pains to avoid. Compare analysis in *Vance v. Hatten*, 600 S.W.2d 828 (Tex.Cr.App.1980).