**Geary RUSHTON, Appellant,**

v.

**STATE of Texas, Appellee.**

No. 13–84–321–CR.

Court of Appeals of Texas, Corpus Christi.

March 21, 1985.

Carl Lewis, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and BENAVIDES and SEERDEN, JJ.

## OPINION

BENAVIDES, Justice.

Appellant was found guilty by a jury of the offense of burglary of a habitation with the intent to commit rape. The jury fur-ther found that appellant had previously been convicted of a felony, and assessed a punishment of thirty-five years' confine-ment in the Texas Department of Correc-tions. We affirm.

Appellant does not challenge the suffi-ciency of the evidence to support the con-viction, therefore, no detailed recitation of the facts is necessary.

In his first ground of error, appellant alleges the court erred in admitting State's exhibits two and three. In his argument, appellant also complains of State's exhibit four.

State's exhibits two and three depict a screen removed from the sliding glass door of the victim's apartment. State's exhibit four is a photograph depicting the interior of the apartment in disarray.

■ Inspection of the statement of facts reveals that counsel for appellant stated he had no objection to State's exhibit three; therefore, appellant will not be heard to complain on appeal of this photo-graph.

Counsel's objection to exhibits two and four was:

"on the basis that what they're attempt-ing to depict has been arranged for the purpose of this picture and for the pur-pose of presentation of this trial."

Appellant's ground of error states:

"The trial court erred in failing to sus-tain appellant's timely objection to the admission of inflammatory and preju-dicial photographs which have been pre-pared for the purpose of prosecution."

That portion of appellant's ground of error complaining that the pictures were inflam-matory and prejudicial was not presented to the trial court and is therefore waived. As we understand it, appellant's complaint is that the pictures were staged by the police officers investigating the offense.

■ Appellant writes in his brief: "On voir dire examination the alleged victim acknowledged that certain items in State's exhibit four had been re-arranged and that she had not made these re-arrangements."

No citation to the record appears in appellant's brief to reveal where the victim's concession appears, and despite reference to the master index prepared by the court reporter identifying the voir dire testimony of the victim, we have been unable to find such testimony. Rather, as the State laid the predicate for admission of State's exhibit four, the victim testified that exhibit four was a true and accurate depiction of the inside of her apartment on the date in question. Under such testimony, the trial court did not abuse its discretion in admitting State's exhibit four. *Burton v. State*, 471 S.W.2d 817, 820 (Tex.Crim.App.1971); *Le Marr v. State*, 165 Tex.Cr.R. 474, 308 S.W.2d 872, 874 (1958).

State's exhibit two was a photograph of the screen off of the victim's patio door. Again, the victim identified the photo as a true and accurate depiction of how the patio was on the date in question. Nothing in the record substantiates appellant's allegation the screen door was positioned by the police for purposes of the photograph. The victim's voir dire testimony was that she did not arrange the screen and did not know who did.

■ Admissibility of photographs rests largely in the discretion of the trial judge. *Brasfield v. State*, 600 S.W.2d 288, 297 (Tex.Crim.App.1980). We cannot say the judge abused his discretion in this case. Appellant's first ground of error is overruled.

■ In his second ground of error, appellant alleges the court erred in overruling his motion for mistrial after what appellant claims was improper closing argument. The complained of argument was as follows:

If you find Geary Rushton not guilty, then you're telling me, you're telling everybody in this courtroom, you're telling everybody in this community, that if a guy spends the night with a girl, sleeps with her, maybe lives with her and then finds out there's some kind of mistake and split it off, then he has a license and he can force her to have sex any time he wants.

Upon appellant's objection to the remark as an improper call to law enforcement and being not proper to any of the evidence presented in the case, the trial court sustained appellant's objection and instructed the jury to disregard such comment, but refused appellant's request for a mistrial.

The generally approved areas of jury arguments were set out in *Alejandro v. State*, 493 S.W.2d 230 (Tex.Crim.App.1973) and are as follows:

1. summation of the evidence;
2. reasonable deduction from the evidence;
3. answer to argument of opposing counsel; and,
4. plea for law enforcement.

■ As a part of his closing argument, defense counsel argued as follows:

... and the falseness with which she's testified in this trial.

I don't believe she was raped, and I don't believe Geary Rushton had any— had any need or you know, to rape her. They had lived together. They had intercourse while they lived together. They had intercourse thereafter, and they'd had intercourse in the bathroom down at the Sheraton Hotel on her birthday. It wasn't like she was so naive and so pristeen (sic) and, you know, I'm not really trying to assassinate her character, but it wasn't like she was, I mean, just so untouchable that Geary Rushton, through normal channels and normal procedures, couldn't gain, you know, sexual intercourse with her. She was that kind of person with him. They had that kind of relationship with each other. There's no evidence of any other beating her up or forcing her to submit to his sexual advances or anything like that. There just wasn't any need for it.

Defense counsel thus testified that the defendant did not rape the victim and argued that because of the relationships between the victim and the defendant, that she was "that kind of person" that the jury could presume she would always consent to sex with the defendant, and that their rela-

tionship precluded rape or the use of force to engage in sex. The complained of argument in context and in relation to this defense argument was as follows:

> Ladies and gentlemen, you'd have to disregard the blood on the pillowcase and her head being banged against a closet wall. I think you can summarize this case and bring it all down to—to a major question, you know, doesn't Renee Rybkowski have the right to say, "No, I don't want it." Just because she's done it in the past with Geary Rushton, just because she's—she's had an active sexual life and leads a certain kind of lifestyle, does that make her no's any less important? Does it make her no's, maybe's? Does it make them semi-yeses? A no means a no, and when Renee Rybkowski says no; it should mean no, and let her know that. If you find Geary Rushton not guilty, then you're telling me, you're telling everybody in this courtroom, you're telling everybody in this community, that if a guy spends the night with a girl, sleeps with her, maybe lives with her and then finds out there's some kind of mistake and split it off, then he has a license and he can force her to have sex any time he wants.[1]

There was evidence presented at trial that the victim had, in fact, lived with the defendant and had sexual relations with him prior to the time of the alleged offense. The alleged offense occurred around 4:30 a.m. The issue of consent to enter the habitation, as well as the question of whether the sexual intercourse at the time of the alleged offense was forced upon the victim or consented to by her, were major disputes before the jury. Given the totality of the evidence, the State's theory of the case, the defense presented, the above quoted argument of defense counsel, and the above quoted argument of State's counsel, we conclude that the above remark was neither so prejudicial nor so harmful that the court's instruction was insufficient to cure the harm, if any, of the remark.

Assuming arguendo that such argument was improper, we note that the cases appellant cites concerning the expectations of the community are not in point. Here, the argument related to the jury as a voice speaking to the community, not to lending its ear to community expectations. *See Rodriguez v. State,* 649 S.W.2d 329, 330 (Tex.App.—Corpus Christi 1983, no pet.). Appellant's second ground of error is overruled.

In his third ground of error, appellant alleges the court erred in responding to a question from the jury concerning the evidence.

In ruling on this ground of error, we begin with the proposition that the court must interpret the jury's communication and then decide, in its discretion, what sections of the testimony will best answer the query, and limit the testimony accordingly. *Iness v. State,* 606 S.W.2d 306, 307, 314 (Tex.Crim.App.1980).

The jury question signed by the foreman read as follows:

> "Judge, we disagree to when Miss Cheek called the City Police. Was it when she heard two men fighting or before? Was there a continual struggle?"

The following testimony was read to the jury in response to their question after counsels for the State and defense were advised of the parts to be read and after each party was given an opportunity to object:

> Question, by Mr. Coffey: All right. You called the security guard? Answer, by Miss Cheek: As soon as I heard the screaming. Question: Okay. Did you have an opportunity to call anyone else? Answer: Well, I called the security guard immediately, and after about five to 10 minutes the screaming stopped, and so I didn't do anything, but then a little bit later when I heard a large fight break out again, I called the City Police. Question: All right. Did you hear anyone

---

1. Underlined portion complained of and which the trial court instructed the jury not to consider.

arrive at the apartment? Answer: Yes. The second fight is when I heard—I heard what sounded like a second man arriving, knocking on the door, and then, I don't know how, some how the door came open, and I heard two men fighting and screaming, and I looked out my window, and I saw two men fighting a little bit in the doorway, and then I heard one, sounded like he fell—or fell down the stairs, and then I heard some more screaming from the yard, and then it sounded like the first man took off. Do you want me to continue with what I heard? Question: Go ahead. Answer: The first man took off, and the second man stayed inside and had a fight with the girl.

■ The testimony read to the jury did, in fact, fairly and in proper context respond to the disagreement that the jury had about the testimony as reflected in its note.

Having reviewed the record, we cannot say the court abused its discretion in responding to the jury's note. Appellant, in his brief, now complains that the testimony relating to a fight between some second person and the victim, and other testimony relating to the calling of the security guard should have been read to the jury. The jury note did not indicate a dispute as to such matters and defense counsel made no request for such testimony in the trial court. Appellant's third ground of error is overruled.

The judgment of the trial court is AFFIRMED.